RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0278P (6th Cir.)
File Name: 02a0278p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              *v.*

DONALD MIGGINS (00-6708),
EDWARD MCDANIELS
(00-6709), and CHARLES
MOORE, JR. (01-5198),
              *Defendants-Appellants.*

Nos. 00-6708/
6709; 01-5198

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-00082—Todd J. Campbell, District Judge.

Argued and Submitted: May 3, 2002

Decided and Filed: August 16, 2002

Before: NELSON, SILER, and CLAY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Jack E. Seaman, LYELL, SEAMAN & SHELTON, Nashville, Tennessee, for Appellant Charles Moore, Jr. Van S. Vincent, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

1

**ON BRIEF:** Jack E. Seaman, LYELL, SEAMAN & SHELTON, Nashville, Tennessee, Hershell D. Koger, Pulaski, Tennessee, William B. Bruce, BRUCE, WEATHERS, CORLEY & LYLE, Nashville, Tennessee, for Appellants. Van S. Vincent, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

————————————

## OPINION

————————————

CLAY, Circuit Judge. Defendants Donald Miggins, Edward McDaniels and Charles Moore, Jr. appeal from the respective criminal judgments entered against them arising from drug trafficking. Miggins challenges his sentence, while McDaniels and Moore claim that the district court erred in denying their suppression motions. For the reasons set forth below, we **AFFIRM** the district court's judgments.

## BACKGROUND

Defendants' convictions and sentences arise from the controlled delivery on December 2, 1999 by the Nashville Metropolitan Police Department via Federal Express of a package from Los Angeles containing slightly over one kilogram of cocaine to 2335 Cooper Terrace, Nashville, Tennessee, the residence of Defendant Moore. Defendants Miggins and McDaniels and another co-defendant, Derek Watson, met the police officer posing as a driver of the Federal Express van outside Moore's residence, and Miggins signed for the package under an assumed name. After Miggins, McDaniels and Watson left with the package, the Nashville police searched Moore's residence pursuant to an anticipatory search warrant, seizing a firearm. Moore was arrested shortly thereafter when he arrived home, giving a statement to the police in which he admitted that the firearm belonged to him. The Nashville police also arrested Miggins, McDaniels and Watson shortly after they left with the

Moore knowingly, voluntarily and intelligently waived his *Miranda* rights. Thus, for the foregoing reasons, we **AFFIRM** the district court's judgments.

package containing the cocaine, and subsequently searched Miggins and McDaniels' residence at 5161 Rice Road, Apartment #139, Nashville, Tennessee, pursuant to a search warrant, seizing firearms and cocaine.

In a seven-count indictment filed on April 12, 2000, Miggins, McDaniels and Watson were charged in the first six counts, and Moore was charged in the last count. Count I charged Miggins, McDaniels and Watson with conspiring to distribute over 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count II charged Miggins, McDaniels and Watson with possessing with intent to distribute over 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count III charged Miggins and McDaniels with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count IV charged Miggins and McDaniels with possession of a Taurus 9mm pistol, a Marlin 30/30 caliber rifle, and a Smith and Wesson .357 caliber pistol in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); Count V charged McDaniels with being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); Count VI charged Miggins with being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and Count VII charged Moore with being a convicted felon in possession of a firearm, a 9mm Ruger pistol, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court granted Moore's motion to sever, and he was subsequently tried separately from Miggins, McDaniels and Watson.

**The Hearing on McDaniels' Suppression Motion**

Before trial, McDaniels filed a motion to suppress the evidence seized from the apartment that he shared with Miggins. At the suppression hearing on August 14, 2000, Officer Greg Adams of the Nashville Metropolitan Police Department, the affiant on the search warrant, testified that he was notified by Deputy Kent Wegener of the Los Angeles

County Sheriff's Department that a Federal Express package containing cocaine was being sent to Nashville from California. When the package arrived in Nashville, a narcotics dog detected the presence of a controlled substance. Upon opening the package, the police found slightly over one kilogram of cocaine in several cylindrically-shaped candles.

When the police conducted a controlled delivery of the package containing the cocaine to the address listed, 2335 Cooper Terrace in Nashville, Miggins, McDaniels and Watson greeted the Federal Express van upon its arrival. After Miggins signed for the package, they immediately departed in a vehicle, but were soon stopped and arrested by the police. Upon their arrest, the police found out that Miggins and McDaniels lived together at 5161 Rice Road, Apartment # 139 in Nashville. In addition, Miggins was found with a piece of paper listing the Cooper Terrace address and the names of "Tommy Lee" and "Keith Jackson." The package containing the cocaine was addressed to "Tommy Lee" and the sender was "Keith Jackson." Thereafter, Officer Adams also learned that Watson and Miggins were tied to the South Central Los Angeles area, with Watson and Miggins admitting that they were members of the 190 Delamos Crips gang from Los Angeles. Checking with Deputy Wegener of the Los Angeles County Sheriff's Department, Officer Adams was further informed that Miggins had been previously charged and convicted in California on "numerous cocaine charges." Officer Adams also testified that Moore, who lived at the 2335 Cooper Terrace address, is McDaniels' brother, and that Watson was then dating McDaniels and Moore's sister. Based upon this information, Officer Adams secured a search warrant for Miggins and McDaniels' residence at 5161 Rice Road, Apartment #139, seizing 3.7 grams of cocaine base and three firearms.

At the conclusion of the hearing, the district court denied McDaniels' suppression motion, finding that while Officer Adams did not have sufficient information to establish probable cause for the search of McDaniels and Miggins'

suppression hearing established that after Officer Adams orally advised Moore of his *Miranda* rights, Moore stated that he understood them. Moore also agreed to answer Officer Adams' questions without first speaking to attorney. There is nothing in the record to indicate that Moore's will was overborne such that he was coerced into making statements to Officer Adams. Although Moore suggests that his waiver was not knowingly, voluntarily and intelligently made because he did not sign a waiver form listing his rights, he offers no authority, and none can be found, for the proposition that a written waiver is necessary to establish a knowing, intelligent and voluntary waiver of *Miranda* rights.

### III.

Moore finally claims that the evidence at trial was insufficient to prove that he knowingly possessed a firearm in violation of 18 U.S.C. §§ 922 and 924. Although Moore moved for a judgment of acquittal at the close of the government's case, he failed to renew his judgment of acquittal at the close of the proofs. Because Moore did not preserve this issue for appellate review, we will not review it "absent a 'manifest miscarriage of justice.'" *United States v. Swiden*, 888 F.2d 1076, 1080 (6th Cir. 1989). Here, there was no "manifest miscarriage of justice," as the evidence was clearly sufficient to convict him of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922 and 924.

### CONCLUSION

Accordingly, the district court did not err in applying the two-level increase to Miggins' sentence under USSG § 2D.1.1(b)(1) for possession of a firearm and by enhancing his punishment based upon a prior drug conviction. We also conclude that McDaniels' suppression motion was properly denied because there was probable cause for the issuance of a search warrant. Finally, the district court properly denied Moore's suppression motions, finding that the triggering event of the anticipatory search warrant occurred and that

proper, we need not consider whether the search was valid under the good faith exception set forth in *Leon*, 468 U.S. at 897.

## II.

The district court also did not err in denying Moore's motion to suppress the statements that he made to Officer Adams after his arrest, finding that Moore knowingly, voluntarily and intelligently waived his rights under *Miranda*. In reviewing the district court's denial of a defendant's motion to suppress, this Court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Bradshaw*, 102 F.3d 204, 209 (6th Cir. 1996). The specific standard of review concerning a district court's conclusion about the voluntary nature of an inculpatory statement was stated in *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999):

When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary. This Court has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement.

190 F.3d at 422 (citations omitted). *See also Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000) (setting forth the factors for evaluating whether a defendant has knowingly, voluntarily and intelligently waived his *Miranda* rights).

In this case, the district court did not err in finding that Moore knowingly, voluntarily and intelligently waived his *Miranda* rights. The evidence presented at Moore's

apartment, the search was nonetheless valid under the good faith exception stated in *United States v. Leon*, 468 U.S. 897 (1984).

## The Joint Trial of Miggins, McDaniels and Watson

At the trial for Miggins, McDaniels and Watson, Officer Adams testified in pertinent part that following their arrests, Miggins was found with a piece of paper in his pocket with information listing "Darnel Smith" as the sender and "Keith Jackson" as the recipient, as well as the name "Tommy Lee." When he signed for the package, Miggins used the name "Darnel Smith." Subsequently, during the search of 5161 Rice Road, Apartment #139, the police found an airline ticket in Miggins' name showing a flight from Los Angeles to Nashville, as well as a Western Union receipt for a money transfer listing the sender as "Darnel Smith" and the recipient as "Keith Jackson" and the payout location as Carson, California. A fully loaded .357 magnum revolver and 3.7 grams of crack cocaine were also recovered from a dresser drawer in the apartment. In addition, a loaded Taurus 9mm semiautomatic pistol, along with electronic scales that are commonly used to weigh drugs, were found in the residence.

The jury returned its verdicts on September 8, 2000. Miggins was found guilty of conspiracy, possession with intent to distribute cocaine and felon in possession of a firearm, but acquitted of the charges of possessing cocaine base and possessing a firearm in furtherance of a drug trafficking crime. McDaniels was convicted of being a felon in possession of a firearm, as well as the lesser included offense of possession of cocaine base, but was acquitted of conspiracy, possession with intent to distribute cocaine, and possession of a firearm in furtherance of a drug trafficking crime. Watson was acquitted of the charges against him. Both Miggins and McDaniels have appealed their convictions.

**The Hearing on Moore's Suppression Motions**

Thereafter, on October 12, 2000, Moore filed motions to suppress the evidence found as a result of the execution of the anticipatory search warrant at his residence on December 2, 1999 and the statements that he made to Officer Adams during questioning after the execution of the anticipatory search warrant.  At the hearing on Moore's suppression motions, Officer Adams, the affiant of the search warrant, testified that the application for the search warrant provided that a package would be delivered to 2335 Cooper Terrace by officers via a Federal Express van, and that "[w]hen it is delivered to this address and possession of the package is taken by someone inside 2335 Cooper Terrace, as is anticipated, then and only then will the search warrant be executed." Officer Damion Huggins, who participated in the surveillance of Moore's residence at 2335 Cooper Terrace and the execution of the search warrant at the same residence, gave testimony that during the course of his surveillance, he saw Miggins, McDaniels and Watson enter and exit Moore's residence before the delivery of the package.  When the Federal Express van arrived with the package, Miggins, McDaniels and Watson were outside, and Miggins signed for it, using a false name.  According to Officer Huggins, Defendants did not go back inside the residence with the package, but immediately left the premises in a vehicle.  At the hearing, Derek Watson gave contrary testimony, stating that neither he nor his two co-defendants had a key to Moore's residence and that none of them entered Moore's residence before they left with the package.

After the delivery of the package, the police executed the anticipatory search warrant, finding a firearm in Moore's residence.  While the search was in progress, Moore returned to his residence and was arrested.  Before questioning Moore about the package that was delivered to his residence and his relationship to Miggins, McDaniels and Watson, Officer Adams orally advised Moore of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and Moore acknowledged that

be able to evade the effects of a warrant simply by getting rid of the supposed contraband or its container" and that "an anticipatory warrant whose perfection requires no more than the delivery of a package to, or in the presence of, the suspect, is not invalidated because the parcel is taken off the premises after delivery." *Id.* at 671; *see also Gendron,* 18 F.3d at 966 (finding that the triggering language that a search was authorized after the parcel "is delivered by mail and taken into the residence" by the defendant was not ambiguous under the background facts of the case, distinguishing *Ricciardelli,* which found an anticipatory search warrant containing similar triggering event language to be invalid).

As in *Jackson* and *Becerra* where the search warrants were found not to be invalid just because they did not require the package to remain on the premises, the search warrant in this case was not invalid just because it failed to require that someone who accepted the package be indoors when the package was delivered and remain indoors after accepting the package. Under a commonsense reading, it was sufficient for the triggering event of the anticipatory search warrant to be fulfilled when the package was taken by someone who had been inside the premises just prior to the delivery of the package.  This reading makes sense from a practical perspective, especially considering the provenance of the package and the quantity of cocaine contained therein, because it sufficiently establishes a connection between the parcel and someone who has access to the residence to which the parcel is addressed.  Here, there was sufficient contact between the parcel that was addressed to Moore's residence and Miggins, who was identified with this residence and who signed for the parcel, so as to satisfy the triggering event of the anticipatory search warrant.

Because the triggering event of the anticipatory search warrant requiring delivery and receipt of the package at his residence was met, the district court did not err in denying Moore's motion to suppress the evidence of the firearm found during a search of his residence.  Given that the search was

agents of the United States Drug Enforcement Administration ("DEA") were informed that a package shipped by DHL Airways from Lagos, Nigeria to an address in Cleveland, Ohio contained heroin. The DEA agents obtained an anticipatory search warrant, stating that its execution would take place "if, and only if, the package is accepted and taken inside the subject premises." In *Jackson*, a customs agent, dressed as a DHL driver, delivered the package to a co-defendant who signed for it and took the package inside the residence. After a SWAT unit entered the home announcing that they had a search warrant, agents apprehended the fleeing defendant in possession of the package as he was attempting to scale a backyard fence. In *Jackson*, this Court found that the search pursuant to the stated condition in the anticipatory search warrant did not violate the Fourth Amendment "simply because Jackson absconded with the package," concluding that "the search warrant was not invalid simply because it failed to require the package to remain on the premises." *Id*. at 1224.

The reasoning and result of *United States v. Becerra*, 97 F.3d 669 (2d Cir. 1996) also supports our conclusion that the triggering event of the anticipatory search warrant in this case was fulfilled. In *Becerra*, customs agents intercepted a package from Cali, Columbia containing cocaine that was addressed to Olga Morena. The magistrate granted the government's application for an anticipatory search warrant, which, "by its terms, would be triggered by the delivery of the parcel." *Id*. at 670. Shortly after a customs agent, posing as a Federal Express employee, delivered the package to Olga Morena, who signed for it and accepted it, the defendant left the premises carrying the parcel. In *Becerra*, the Second Circuit rejected as lacking merit the defendant's contention that the warrant became invalid when he took the package off the premises. Specifically, the Second Circuit in *Becerra* found that the anticipatory search warrant explicitly stated that it was triggered by the delivery of the parcel, and "was in no way conditioned on the continued presence of package," noting that "common sense dictates that a suspect should not

he understood them. According to Officer Adams, Moore did not request to speak to an attorney, was not forced to answer any questions and did not refuse to answer any questions. When questioned about the 9mm Ruger firearm found in his residence, Moore stated that it was for his protection. After Officer Adams informed Moore that, as a convicted felon, he could not legally possess a firearm, Moore remarked that the gun was not his, but belonged to his brother, Edward McDaniels.

At the conclusion of the hearing on October 17, 2000, the district court denied Moore's motions to suppress. First, the district court determined that there was probable cause for an anticipatory search warrant, and that the "triggering event" occurred, specifically finding that Officer Huggins' testimony that Miggins, McDaniels and Watson "went in and out of the residence" was more reliable than co-defendant Watson's testimony that "none of the three individuals entered the residence prior to the issuance of the search warrant." The district court further found that even if the triggering event of the anticipatory search warrant were not met, the search was proper under the good faith exception in *United States v. Leon*, 468 U.S. 897 (1984). The district court also denied Moore's motion to suppress the statements that he made to Officer Adams after his arrest, finding that it was undisputed that Moore received his *Miranda* warnings, that he understood the warnings and that he waived his rights "knowingly, intelligently and voluntarily."

**Moore's Trial**

At Moore's jury trial on the charge of being a felon in possession of a firearm, it was stipulated that he was convicted on May 28, 1998 in the Criminal Court of Davidson County, Tennessee of a crime punishable by a term of imprisonment exceeding one year. Officer Huggins testified that during the search of Moore's residence, he found a Sturm Ruger pistol underneath the bottom drawer of a dresser in a bedroom. Officer Adams also testified that when

he questioned Moore about the pistol, Moore first told him that the pistol was for his protection, but then claimed that it belonged to his brother, Defendant McDaniels, after being told that, as a convicted felon, he could not legally possess a weapon. Special Agent Mark Hoback of the Bureau of Alcohol, Tobacco and Firearms also testified that the firearm found in Moore's residence was not manufactured in Tennessee, and thus had traveled in interstate or foreign commerce. At the close of the government's proofs, Moore moved for a judgment of acquittal, which was denied by the district court. At the close of the proofs, the jury found Moore guilty of the charge of being a felon in possession of a firearm.

## DISCUSSION

**Miggins' Appeal**

### I.

Miggins first argues that at sentencing the district court erred in applying the two-level increase to his sentence under USSG § 2D1.1(b)(1) for possession of a firearm. We review a district court's factual findings under USSG § 2D1.1(b)(1) for clear error. *United States v. Williams*, 176 F.3d 301, 307 (6th Cir. 1999). A district court's legal conclusions regarding the application of the sentencing guidelines are reviewed *de novo. United States v. Saikaly*, 207 F.3d 363, 367 (6th Cir. 2000).

USSG § 2D1.1(b)(1) provides for a two-level increase to the base offense level for a person convicted of certain drug trafficking offenses "[i]f a dangerous weapon (including a firearm) was possessed." Note 3 to the commentary section of USSG § 2D1.1(b)(1) states in pertinent part:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if

According to the testimony of Officer Huggins, however, Miggins, McDaniels and Watson went in and out of Moore's residence before Miggins signed for the package. Although Watson testified at the suppression hearing that he and his codefendants never entered Moore's residence, the district court found Officer Huggins' testimony that they went in and out of the residence to be more credible than Watson's testimony that they did not enter the residence. We find no clear error in the district court's factual determination in this respect.

Accordingly, based upon this determination of the facts, we believe that the triggering event for the anticipatory search warrant was met. Here, the triggering event required the delivery and acceptance of the package by someone inside the residence. On its face, the affidavit does not require that the person receiving the package actually be inside the residence when the package is delivered or that the person receiving the package take it inside the residence and remain indoors. *See Garcia*, 882 F.2d at 704 ("Nowhere did the warrant require that Wilson-Grant or any one else take possession of the cocaine, nor was there even any requirement that Hooks and Oliver give up possession.") Read in a commonsense fashion, and avoiding a "hypertechnical" construction, we believe that the triggering event language of the affidavit was satisfied if the package was taken by someone who had been inside the residence just prior to its delivery. *See Gendron*, 18 F.3d at 966 (reading triggering language of an anticipatory search warrant "in a commonsense fashion" to conclude that condition of search warrant was met when package was delivered and received by the defendant). Because there was sufficient delivery of the parcel to Moore's residence to fulfill the condition of the anticipatory search warrant, the police were thus authorized to search Moore's residence. *Id.*

Our conclusion that the triggering event of the anticipatory search warrant was met when the package was taken by someone who had been inside the residence is consistent with this Court's reasoning and result in *Jackson.* In that case,

Watson were outside the house when the Federal Express van delivered the package and immediately left the premises with the package after Miggins signed for it and accepted delivery, Moore argues that the search of his residence pursuant to the search warrant was unauthorized because the warrant failed to satisfy the triggering event language.

This Circuit, like other circuits, has approved of anticipatory search warrants. *United States v. Jackson*, 55 F.3d 1219, 1223 (6th Cir. 1995); *United States v. Lawson*, 999 F.2d 985, 987-88 (6th Cir. 1993); *United States v. Rey*, 923 F.2d 1217, 1220-21 (6th Cir. 1991). An anticipatory search warrant is a search warrant that "by its terms [takes] effect not upon issuance but at a specified future time." *Jackson*, 55 F.3d at 1223. Although courts have required that conditions triggering the anticipatory search warrant be "explicit, clear, and narrowly drawn," *United States v. Ricciardelli*, 998 F.2d 8, 12 (1st Cir. 1993) (quoting *United States v. Garcia*, 882 F.2d 699, 703-04 (2d Cir. 1989)), warrants and their supporting documents are to be read "not 'hypertechnical[ly],' but in a 'commonsense' fashion." *United States v. Gendron*, 18 F.3d 955, 966 (1st Cir. 1994) (quoting from *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). In this case, the affidavit attached in support of the warrant specified the triggering event. Although the search warrant did not contain the triggering event, the search warrant constituted a valid anticipatory search warrant, as it incorporated the affidavit. *See United States v. Vigneau*, 187 F.3d 70, 79 (1st Cir. 1999) (citing *United States v. Dennis*, 115 F.3d 524, 529 (7th Cir. 1997)); *see also United States v. Hugoboom*, 112 F.3d 1081, 1087 (10th Cir. 1997); *United States v. Moetamedi*, 46 F.3d 225, 228-29 (2d Cir. 1995); *United States v. Tagbering*, 985 F.2d 946, 950 (8th Cir. 1993).

In this case, the package containing the cocaine was delivered by a police officer posing as a Federal Express driver, who was met by Miggins, McDaniels and Watson in front of Moore's   residence at 2335 Cooper Terrace.

the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet. . . .

USSG § 2D1.1(b)(1), n.3.  To enhance a sentence under USSG § 2D1.1(b)(1), the government must show by a preponderance of the evidence that the defendant possessed the firearm during the drug trafficking offense. *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991).  Once the government satisfies its burden, "a presumption arises that such possession was connected to the offense."  *Id*. Possession may be actual or constructive.  *United States v. Cochran*, 14 F.3d 1128, 1132 (6th Cir. 1994).  To establish constructive possession, the government must show that the defendant had "'ownership, dominion, or control' over the [firearm] or 'dominion over the premises' where the [firearm] is located." *Id*. (quoting *United States v. Synder*, 913 F.2d 300, 304 (6th Cir. 1990)).  Circumstantial evidence is sufficient to establish constructive possession. *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002).  If the government satisfies its initial burden of showing that the defendant was in possession of a weapon during the offense, then the burden shifts to the defendant to demonstrate that it was clearly improbable that the weapon was connected to the offense. *Sanchez*, 928 F.2d at 1460.  If the defendant fails to make such a showing, then  enhancement under USSG § 2D1.1(b)(1) is appropriate. *United States v. McGhee*, 882 F.2d 1095, 1097-98 (6th Cir. 1989).

Miggins was acquitted of possessing a Taurus 9mm pistol, a Marlin 30/30 caliber rifle, and a Smith and Wesson .357 caliber pistol in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c) (Count IV), but was found guilty of being a felon in possession of a firearm (Count VI). Notwithstanding, the jury's verdict of acquittal on the 18 U.S.C. § 924(c) firearm possession charge does not prevent the sentencing court from considering conduct underlying the

charge of which  Miggins was acquitted, so long as that conduct has been proved by a preponderance of the evidence. *United States v. Watts,* 519 U.S. 148, 157 (1997) (holding that acquittal on a 18 U.S.C. § 924(c) offense did not prevent the sentencing court from considering under USSG § 2D1.1 whether the firearm was possessed in connection with the drug trafficking offense).

In this case, the government established by a preponderance of the evidence that Miggins possessed a weapon in connection with the drug trafficking activity.  During the search of the apartment shared by Miggins and McDaniels, the police found three weapons: a rifle was found in McDaniels' bedroom; a .357 revolver was found in a chest of drawers in McDaniels' bedroom; and a 9mm pistol was found on a chair in the living room, near the front door.  While no evidence was introduced into the record about the ownership of the weapons seized from the apartment, the government presented evidence that Miggins was involved in a conspiracy to distribute cocaine, and that the apartment was used to store items relating to Defendants' drug trafficking activity. Besides the firearms, the police recovered scales, baggies used for packaging drugs, crack cocaine, and a receipt showing the transfer of funds using the same names as those on the package containing the kilogram of cocaine received by Defendants.  *See United States v. Quarles*, 2002 WL 228144, at *4 (6th Cir. Feb. 13, 2002) (citing *United States v. Payne*, 805 F.2d 1062, 1065 (D.C. Cir. 1986) (recognizing that weapons are as common as drug paraphernalia as tools of the drug trafficking trade).

Thus, there was sufficient circumstantial evidence establishing Miggins' constructive possession of a firearm to support enhancement under USSG § 2D1.1(b)(1).  *See Hough*, 276 F.3d at 894 (finding sufficient circumstantial evidence establishing constructive possession as to support enhancement under USSG § 2D1.1(b)(1)).  Specifically, the circumstantial evidence in this case is sufficient to establish Miggins' constructive possession of the 9 mm pistol found on

dealer's house); *United States v. Williams*, 974 F.2d 480, 482 (4th Cir. 1992) (*per curiam*) (finding that affidavit establishing that known drug dealer resided in motel was sufficient to show probable cause to search motel room for drug paraphernalia); *United States v. Davidson*, 936 F.2d 856, 859-60 (6th Cir. 1991) (holding that the police had probable cause for the issuance of a search warrant since the affidavit revealed a substantial basis for concluding that a search of the defendant's residence would uncover evidence of wrongdoing); *United States v. Cruz*, 785 F.2d 399, 406 (2d Cir. 1986) (finding probable cause for search of drug dealer's apartment, even though he was not seen using the apartment).

Because there was probable cause supporting the issuance of a search warrant for McDaniels and Miggins' apartment at 5161 Rice Road, we need not consider whether the search was proper under the good faith exception stated in *Leon.* Accordingly, the denial of McDaniels' suppression motion was proper.

**Moore's Appeal**

I.

In his appeal, Moore first challenges the district court's denial of his motion to suppress the evidence of the firearm seized from his residence, arguing that the search pursuant to an anticipatory search warrant violated his Fourth Amendment rights.  Specifically, Moore claims that the triggering event condition was not fulfilled.  The affidavit appended to the search warrant of Moore's  residence provided in pertinent part: "When [the package containing the cocaine] is delivered to this address and possession of the package is taken by someone inside 2335 Cooper Terrace, as is anticipated, then and only then will the search warrant be executed."  According to Moore, the district court erred in finding that the triggering event of the anticipatory search warrant occurred because no one inside the house took delivery of the package.  Since Miggins, McDaniels and

information that both Miggins and McDaniels were involved in drug trafficking. According to the information supplied by Kent Wegener of the Los Angeles County Sheriff's Department, Miggins, who previously resided in Carson, California, had been convicted on "numerous cocaine charges" in California. While the record indicated that Miggins had been charged and convicted of only one cocaine offense in California, that factual error by itself does not detract from the police having probable cause to believe that "other narcotics and equipment used in the distribution of narcotics [would be] located at [McDaniels and Miggins'] apartment."

Here, the district court erred in finding that there was an insufficient nexus between the two locations so as to establish probable cause for a search of McDaniels and Miggins' apartment at 5161 Rice Road. *See United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999) (finding that it was reasonable to suppose that drug dealer stored evidence of dealing at home, even though no drug trafficking was observed to occur there); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999) ("[I]n issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept . . . and . . . in the case of drug dealers evidence is likely to be found where the dealers live.") (quoting *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996)); *United States v. Henson*, 123 F.3d 1226, 1239 (9th Cir. 1997) ("*In the case of drug dealers, evidence is likely to be found where the dealers live.*") (italics in original) (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)); *United States v. Luloff*, 15 F.3d 763, 768 (8th Cir. 1994) (ruling that observations of drug trafficking occurring away from the dealer's residence, coupled with officer's statement in his affidavit that drug dealers often store evidence of drug dealing in their residences, provided probable cause for search of dealer's house); *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993) (*per curiam*) (concluding that observations of drug trafficking away from dealer's residence can provide probable cause to search the

a chair in the living room, if not the rifle found in McDaniels' bedroom and the .357 revolver found in the chest of drawers in his bedroom. Contrary to Miggins' claim, it was not "clearly improbable" that he possessed the firearm(s) during the offense. USSG § 2D1.1(b)(1), n.3.

In this regard, we note that there is no merit to Miggins' contention that there is no support for his sentence enhancement for firearm possession because "the nexus between the Rice Road apartment and the Cooper Terrace/FedEX delivery point were . . . attenuated." As the government points out, other circuits have applied the enhancement for possession of a firearm under USSG § 2D1.1 in circumstances similar to this case. *See United States v. Hunter*, 172 F.3d 1307, 1308-09 (11th Cir. 1999) (finding that enhancement under USSG § 2D1.1 was proper where drug paraphernalia and firearms were found at the defendant's residence located 100 miles from the scene of his arrest); *United States v. Stewart*, 926 F.2d 899, 901-02 (9th Cir. 1991) (applying enhancement under USSG § 2D1.1 even though the firearm was possessed 15 miles away from the site of the drug transaction); *United States v. Durrive*, 902 F.2d 1221, 1231-32 (7th Cir. 1990) (finding enhancement for possession of a firearm under USSG § 2D1.1 was applicable to a defendant charged with conspiracy, even though no drugs were recovered from the apartment, which was used in the course of the conspiracy). Accordingly, the district court did not err in applying the two-level increase to Miggins' sentence under USSG § 2D1.1(b)(1) for possession of a firearm.

## II.

Miggins also contends that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the district court erred by enhancing his punishment based upon a prior drug conviction, since the government did not plead his prior drug conviction in the indictment, and the matter was not submitted to the jury to decide whether it was proved beyond a reasonable doubt.

Here, there was no error because a prior conviction of a crime may be treated as a sentencing factor to be determined by the court. *United States v. Gatewood*, 230 F.3d 186, 192 (6th Cir. 2000)(en banc) (rejecting the argument that *Apprendi* overruled *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which held that a defendant's prior convictions may be treated as a sentencing factor to be determined by the court). Thus, the district court did not err by enhancing Miggins' sentence on the basis of his prior felony drug conviction.

## McDaniels' Appeal

McDaniels argues that even though the district court found that probable cause did not exist for the issuance of the search warrant of his apartment, it erred in finding that the search of his residence was valid under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984). Thus, McDaniels claims that the district court erred in denying his motion to suppress the evidence found in the search of his apartment.

The Fourth Amendment provides that "no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see United States v. Murphy*, 241 F.3d 447, 457 (6th Cir. 2001). To satisfy the warrant requirement, police must have probable cause to conduct a search. *See Warden v. Hayden*, 387 U.S. 294, 301-02 (1967). "The test for probable cause is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Murphy*, 241 F.3d at 457 (citation omitted). A magistrate must make an "informed and deliberate" assessment regarding probable cause. *Aguilar v. Texas*, 378 U.S. 108, 110 (1964). When reviewing a magistrate's determination that probable cause existed for the issuance of a search warrant, this Court must determine, under a totality of the circumstances, whether "the magistrate had a substantial basis for concluding that 'a search would uncover

evidence of wrongdoing.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

The applicable standard of review of a suppression motion concerning whether there is probable cause for the issuance of a search warrant is stated in *United States v. Watkins*, 179 F.3d 489, 494 (6th Cir. 1999):

When reviewing decisions on motions to suppress, this court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed *de novo*.

The standard of review for this Court in determining whether a search warrant describes the place to be searched with sufficient particularity is a *de novo* review. Whether the good-faith exception of *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed.2d 677 (1984), applies to a search is also reviewed *de novo*.

*Watkins*, 179 F.3d at 494 (internal quotation marks and citations omitted).

In this case, probable cause existed for the issuance of a search warrant for McDaniels and Miggins' apartment at 5161 Rice Road. As set forth in the affidavit attached to the search warrant, the facts clearly established a connection between Moore's residence at 2335 Cooper Terrace, where the package from Los Angeles containing one kilogram of cocaine was delivered, and McDaniels and Miggins' apartment. When arrested, Miggins, who signed for the package under the assumed name of "Darnel Smith," was found with a piece of paper in his pocket listing the Cooper Terrace address and the names of "Darnel Smith," "Keith Jackson" and "Tommy Lee." The package containing the cocaine was addressed to "Tommy Lee" and the sender was "Keith Jackson." After the police found out that Miggins and McDaniels were living together, they also obtained