RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

WILLIAM FLOYD PERKINS,

*Defendant-Appellee*.

No. 17-5908

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 4:16-cr-00020-1—Harry S. Mattice, Jr., District Judge.

Argued:  March 14, 2018

Decided and Filed:  April 4, 2018

Before:  BOGGS, BATCHELDER, and THAPAR, Circuit Judges.

---

**COUNSEL**

**ARGUED:**  William Allen Roach, Jr., UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellant.  Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellee.  **ON BRIEF:**  William Allen Roach, Jr., UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, Terra L. Bay, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellant. Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellee.

---

**OPINION**

---

THAPAR, Circuit Judge.  When the triggering event for a warrant did not occur, the government searched the defendant's house anyway.  After the district court granted the defendant's motion to suppress, the government appealed.  We affirm.

I.

Many good Fourth Amendment stories begin with dogs.  *See, e.g.*, *Florida v. Harris*, 568 U.S. 237 (2013) (featuring Aldo the dog).  And so it is here.  This story began when a dog's sniff alerted law enforcement to a suspicious-smelling package.  The dog's sniff was accurate.  The package contained methamphetamine.  The intended recipient was "B. PERKINS," with the address "5831 Rowe Gap RD Belvidere, TN 37306."  R. 20-1, Pg. ID 78.  Further investigation revealed that the defendant, William Perkins, also known as Billy Perkins, resided at 5831 Rowe Gap Road.  According to a trusted confidential informant, Perkins was a methamphetamine dealer.  The informant had known Perkins for twenty years and had purchased methamphetamine from him within the past six months.  Local law enforcement also knew Perkins to be a methamphetamine dealer.

Based on this information, DEA officer Daniel Warren sought an anticipatory warrant to search Perkins's residence.  An anticipatory search warrant differs from a traditional search warrant.  Traditional warrants issue upon a showing of probable cause.  By contrast, an anticipatory warrant only becomes effective upon the happening of some future event—a "triggering condition"—which establishes probable cause for the search.  *United States v. Grubbs*, 547 U.S. 90, 94 (2006).  In this case, Warren proposed the following scheme.  Fellow DEA officer Kyle Brewer would pose as a FedEx driver.  He would knock at the door of 5831 Rowe Gap Road with the malodorous package in hand.  And then Brewer would "hand deliver the above mentioned package *to PERKINS*."  R. 20-1, Pg. ID 79 (emphasis added).  Delivery to Perkins was the warrant's "triggering event"—if and when Brewer put the package in his hands, officers would then search the residence.

A judge issued the warrant, which incorporated this triggering event. But things did not go as planned. The trouble started with a miscommunication. Brewer did not read the warrant. Instead, another officer briefed him on his part—but left out that he needed to hand-deliver the package to Perkins. Accordingly, Brewer went in with the erroneous impression that he simply needed to deliver the package to *someone* at the residence. So when Brewer knocked and a woman came to the door, Brewer asked her if she was expecting a package. "Yes, we are," she said. Brewer did not ask who she was (it turns out she was Perkins's fiancée), nor did he confirm that her "we" referred to Perkins, nor did he know whether Perkins was present. Instead, Brewer simply gave her the package. Officers then executed the search. Perkins, however, was not present, and did not arrive at the residence until about an hour later.

The government thereafter charged Perkins with possession with intent to distribute methamphetamine. He moved to suppress the evidence obtained from the search of his residence, arguing that the triggering event in the warrant was not satisfied because Brewer did not hand-deliver the package to him. A magistrate judge found that the delivery to Perkins's fiancée was close enough, but the district court disagreed, granting Perkins's motion to suppress. The government appeals that ruling.

We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Penney*, 576 F.3d 297, 306 (6th Cir. 2009).

II.

Anticipatory search warrants, like all search warrants, require probable cause. U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause . . . ."); *Grubbs*, 547 U.S. at 94. The triggering event provides that cause. *Grubbs*, 547 U.S. at 94. Here, had Brewer hand-delivered the package to Perkins, no one disputes that the warrant would have been supported by probable cause. But Brewer did not hand-deliver the package to Perkins. So the question becomes: What happens when an anticipatory warrant's triggering event never happens?

Well, it depends. As a general matter, failure to comply with an anticipatory warrant's triggering event "void[s]" the warrant. *United States v. Rey*, 923 F.2d 1217, 1221 (6th Cir. 1991); *see also Grubbs*, 547 U.S. at 100–01 (Souter, J., concurring in part and concurring in the

judgment) ("[I]f an officer . . . makes the ostensibly authorized search before the unstated condition has been met, the search will be held unreasonable."). This follows from Fourth Amendment basics. A neutral, detached magistrate—not law enforcement—must decide whether probable cause supports a warrant. *Johnson v. United States*, 333 U.S. 10, 14 (1948). So the magistrate must be sure what the triggering event is and that it will establish probable cause. *United States v. Ricciardelli*, 998 F.2d 8, 12 (1st Cir. 1993) (observing that those issuing anticipatory warrants must be "particularly vigilant in ensuring that [law enforcement's] opportunities for exercising unfettered discretion are eliminated," and that a triggering event must be "both ascertainable and preordained"). To that end, the triggering event in an anticipatory warrant must be "explicit, clear, and narrowly drawn." *United States v. Miggins*, 302 F.3d 384, 395 (6th Cir. 2002) (quoting *Ricciardelli*, 998 F.2d at 12). Judges cannot leave it to law enforcement to manipulate the triggering event after issuance of the warrant. Rather, law enforcement's role in overseeing the triggering event should be "almost ministerial." *Ricciardelli*, 998 F.2d at 12. One might think, therefore, that courts would require strict compliance with the terms of a triggering event.

Courts, however, do not always require strict compliance. In determining whether a triggering event has been satisfied, "warrants and their supporting documents are to be read 'not hypertechnical[ly], but in a commonsense fashion." *Miggins*, 302 F.3d at 395 (alteration in original) (internal quotation marks omitted) (quoting *United States v. Gendron*, 18 F.3d 955, 966 (1st Cir. 1994)). But what does it mean to read the description of a triggering event commonsensically, and not hypertechnically? Two cases provide some insight. First, in *United States v. Gendron*, law enforcement conditioned execution of an anticipatory warrant at "the residence of Daniel A. Gendron, 105 Winthrop Street, Rehoboth, Massachusetts 02769" on "delivery by mail to and receipt by Daniel Gendron" of a parcel containing child pornography. 18 F.3d at 965. Gendron argued that it was unclear what sort of "receipt" would trigger the warrant. *Id.* at 966. Was it just at his home, or perhaps "downtown or at the Post Office, or ([in the court's] own farfetched example) in Okinawa[?]" *Id.* Unimpressed with Gendron's argument, the First Circuit found no ambiguity in "receipt by Daniel Gendron," applying "commonsense" in concluding that receipt meant receipt at home. *Id.* After all, the warrant also described Gendron's house, identified the target of the search as a video bound for Gendron's

house by mail, and specified that "delivery by mail" to the house should occur. *Id.* For these reasons, the court explained that the triggering event in an anticipatory warrant is sufficiently clear even if it fails to "negate all unintended logical possibilities." *Id.*

We relied upon *Gendron* in *Miggins*. 302 F.3d at 395 (quoting *Gendron*, 18 F.3d at 966). *Miggins*, like this case, involved a controlled delivery of a package containing drugs. *Id.* at 388–89. The triggering event permitted a search when the package was delivered and "taken by someone inside" a residence. *Id.* at 394. When officers set out to execute the warrant, they observed someone inside the house come outside, and delivered the package to that person. *Id.* at 395. The recipient then left the premises with the package. *Id.* at 394. The defendant argued that delivery should have occurred while the person remained inside the home. *Id.* We rejected this argument, observing that a common sense reading of "taken by someone inside" would permit delivery to someone who had just been inside the house. *Id.* at 395. By contrast, requiring that the package be taken by someone *while remaining* inside the house would inject an unintended hypertechnicality into the warrant. *Id.*

The relevant question here, then, is this: Is requiring delivery "to Perkins"—and not to someone else at the residence—a common sense construction of the anticipatory warrant's triggering event, or an unintended hypertechnicality that the court should overlook?

## III.

In this case, requiring delivery *to Perkins* is the only common sense reading of the warrant's triggering event. Hand-deliver "to Perkins" means hand-deliver "to Perkins." This reading is hardly hypertechnical.

By contrast, the government's interpretation lacks common sense. In its view, there is no need to read the triggering event to require hand-delivery "to Perkins." Instead, we should just read it to say "to anybody inside the residence with apparent authority to accept delivery." But the replace-some-words canon of construction has never caught on in the courts. *Cf. Murphy v. Smith*, 138 S. Ct. 784, 787–88 (2018) (refusing to replace words that Congress wrote in a statute). And there is no reason it should here. Plus, it is not as if requiring delivery "to Perkins" was unintended. Anticipatory warrants triggered by controlled deliveries are nothing new.

Sometimes the government ties the triggering event to a specific person. *E.g.*, *Gendron*, 18 F.3d at 966 (requiring "receipt by Daniel Gendron"); *Ricciardelli*, 998 F.2d at 9 (requiring "receipt by Steven L. Ricciardelli"). And sometimes the government does not. *E.g.*, *Grubbs*, 547 U.S. at 92 (requiring "recei[pt] by a person[]"); *Miggins*, 302 F.3d at 394 (requiring that package be "taken by someone"). Here, the government authored a triggering event that called for delivery "to Perkins." Common sense dictates that the government intended what it wrote.[1]

The government insists, however, that it complied with the warrant because the language requiring delivery to Perkins is a mere technicality that we should overlook. It points out that the delivery that occurred still established a connection between the package and Perkins's fiancée, who had access to the residence. In other words, the government argues that whether the triggering event actually happens is a technicality so long as what actually occurred would still support probable cause. But even assuming that the delivery here established probable cause, the government's argument runs afoul of the Fourth Amendment. In the typical case, the Fourth Amendment requires that law enforcement present probable cause before a magistrate and secure a warrant if it wants to search a home. *Johnson*, 333 U.S. at 14; *see* Laura K. Donohue, *The Original Fourth Amendment*, 83 U. Chi. L. Rev. 1181, 1185, 1314 (2016). The magistrate—as opposed to a "zealous officer[]" who is "engaged in the often competitive enterprise of ferreting out crime"—makes a "disinterested determination" of whether probable cause exists. *Johnson*, 333 U.S. at 13–14. Absent an exception to the warrant requirement, therefore, law enforcement cannot determine probable cause for itself and search a home without going to the magistrate to obtain a warrant first. *Groh v. Ramirez*, 540 U.S. 551, 560 (2004). But this is precisely what the government's position invites. We cannot substitute a more broadly phrased triggering condition—*e.g.*, "delivery to anybody inside the residence with apparent authority to accept delivery"—after the fact. Even if this phrase might have been sufficient to persuade a neutral magistrate that there was probable cause to search, the actual triggering condition authorized a search "only" upon delivery to Perkins.

---

[1]No one questions the government's position that search warrants are directed at places, not people. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978). But that truism misses the point of this case. The warrant at issue was directed at 5831 Rowe Gap Road—a place. It just so happens that the *triggering event* depended on delivery to a person. The fact that warrants are directed at places does not mean that an anticipatory warrant cannot be contingent on an event involving a person, or something else.

In other words, law enforcement needs to say what it means and mean what it says when proposing a triggering condition as part of an anticipatory warrant. *See Miggins*, 302 F.3d at 395 (requiring that triggering conditions be "explicit, clear, and narrowly drawn" (quoting *Ricciardelli*, 998 F.2d at 12)). If law enforcement believes that a broadly phrased triggering condition would suffice to establish probable cause in any particular case, an affiant can draft *that* condition for the magistrate's approval. But in circumstances like those here, law enforcement must abide by at least a common sense reading of the triggering condition that the magistrate actually approves. And law enforcement did not in this case.

If the government sees this result as unduly formalistic, there may have been ways around it. But for whatever reason, the government did not pursue any of them. For starters, one might question why the search here was not "reasonable" under the Fourth Amendment, even though it did not comply with the triggering event in the warrant. *Compare Groh*, 540 U.S. at 558, *with id.* at 571–77 (Thomas, J., dissenting). After all, the government did receive a warrant with a triggering event which, if it had happened, would have established probable cause. The government then executed that warrant in circumstances which may well have constituted probable cause—albeit not probable cause that the magistrate considered when signing off on the anticipatory warrant. The government, however, has not presented any argument that its search was independently reasonable on this basis even if the warrant was invalid, thus forfeiting the argument. *United States v. Martinez*, 588 F.3d 301, 317 (6th Cir. 2009); *see United States v. Archibald*, 589 F.3d 289, 301 n.12 (6th Cir. 2009) (holding that government forfeited good-faith argument by failing to argue it on appeal). Nor does the government contend that the factual allegations in the warrant *aside from* the triggering event independently gave rise to probable cause, *see United States v. Vigneau*, 187 F.3d 70, 80–81 (1st Cir. 1999), again resulting in forfeiture, *Martinez*, 588 F.3d at 317.

Instead, the government attempts to derive support for its position from our decisions in *Miggins* and *United States v. Penney*. Both, however, are inapposite. Unlike in *Miggins*, where requiring delivery to someone while inside would have imposed an unintended hypertechnicality, 302 F.3d at 395, delivery "to Perkins" is the only thing that the triggering event in this case envisioned. Not only that, but *Miggins*'s triggering event was not directed at a specific person,

but only required that the package be delivered to a specified residence and that "possession of the package [be] taken by someone inside." *Id.* at 394.

*Penney* presents a more difficult question. Penney was a drug-sale middleman, and the government wanted to search his house after staging a drug transaction involving a confidential informant. 576 F.3d at 302, 310–11. So law enforcement got an anticipatory warrant authorizing a search once "Penney meets with the [confidential informant] to examine and attempts to purchase narcotics by obtaining funds or promising to obtain funds in the near future in order to complete the transaction." *Id.* at 310. As it happened, Penney did not examine any narcotics, and he did not attempt to purchase drugs himself. *Id.* But Penney did meet with the confidential informant and supply a buyer. *Id.* at 311. Our court later approved the resulting search, concluding that "[a]ll the *operative transactions* specified in the warrant actually occurred"—*i.e.*, the specified person (Penney) met with the confidential informant at the specified place (Penney's residence) and attempted to complete the deal by supplying a third-party purchaser. *Id.* (emphasis added). It therefore found the triggering event satisfied, because Penney, who was the target of law enforcement's investigation, played the role in the operative transaction that the warrant envisioned, even though Penney never actually examined the narcotics, as a hypertechnical reading of the warrant might require. *Id.* A common sense reading of the triggering event, however, did not indicate that Penney had to examine narcotics (only that he meet with the confidential informant for that purpose) nor that the attempt to purchase drugs could not involve a third-party buyer (Penney being a known middleman). *Id.*

Here, unlike in *Penney*, the "operative transaction[]" specified in the warrant did not occur. Perkins was law enforcement's target, and law enforcement thought his role important enough to require Perkins's personal involvement in the triggering event. But although the hand-delivery occurred at the specified place (Perkins's residence), the specified person (Perkins) was not actually there and played no role in what actually occurred. Under these circumstances, reading delivery "to Perkins" to mean anything other than delivery "to Perkins" is not common sense, but rather nonsensical.

\* \* \*

Because law enforcement did not abide by the anticipatory warrant's triggering condition, the district court's suppression of the evidence recovered from Perkins's residence is **AFFIRMED**.