NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0377n.06

Nos. 17-6393/6461

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 30, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| JOSEPH DANIEL HUNTLEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SILER, MOORE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Joseph Huntley appeals a district court order denying his motion to suppress evidence seized pursuant to a search warrant. In defendant's view, the warrant lacked probable cause because it was "anticipatory" and its "triggering conditions" had not occurred at the time of its execution. We disagree, and affirm.

I.

Using information gleaned from confidential sources, law enforcement officials identified Huntley as a methamphetamine trafficker in west Tennessee. One informant told officials he purchased from Huntley several ounces of the drug per week for about a year, and another for a few weeks. The informants also detailed Huntley's modus operandi—defendant flew to California, deposited drug proceeds into a bank account, obtained more drugs, and rented a car for

one-way transit with the drugs back to Tennessee. Huntley stored the methamphetamine at his residence in Scotts Hill, Tennessee, and allowed trusted buyers to come to his house to both purchase and receive the drugs. He permitted "non-trusted" purchasers to pay at his house, but distributed their drugs off-site.

Agents independently verified Huntley's suspicious travel plans, obtaining records reflecting several one-way car rentals and numerous cash bank deposits. They also learned Huntley had access to numerous firearms; he kept approximately twenty guns at his house, and others on his person and in a backpack nearby at all times. Defendant did not just have guns, he used them to further his trafficking. On one occasion, for example, Huntley threatened a man who owed Huntley money at gunpoint, telling him "that if he did not pay back a drug debt, he would come back and take his possessions" and that "he had a new Uzi that he was itching to try out." And in a different instance, an informant successfully talked Huntley out of killing another man suspected of stealing from Huntley. The second man Huntley threatened corroborated Huntley's MO, detailing a recent trip to California with Huntley to purchase six pounds of methamphetamine.

The investigation culminated in early 2016. Agents learned Huntley flew to California on January 31, 2016, to purchase more methamphetamine, and planned to return on February 4, 2016. While surveilling Huntley's house on the evening of the fourth, they observed a vehicle with out-of-state license plates pull into the garage. Accordingly, agents prepared a search warrant and presented it to a magistrate judge for his signature.

While at the magistrate judge's house, an agent received a call from one of the informants. The informant told the agent that Huntley had returned to his Scotts Hill residence, was in possession of methamphetamine, and had requested the informant's presence. The agent informed the magistrate judge of this development before the magistrate judge signed the warrant

authorizing the search of Huntley's house.  Paragraph 28 of the agent's affidavit supporting the warrant is of particular interest to this appeal:

> The TARGET PREMISES is located in a very rural area of Scotts Hill, Tennessee in which law enforcement will have a difficult time establishing surveillance.  In addition, law enforcement wishes to execute this search warrant after HUNTLEY has arrived back from California with the methamphetamine.  Law enforcement does not know in what hour HUNTLEY will return and realizes the benefit that the element of surprise would be for the safety of officers and others due to HUNTLEY and associates possession of multiple firearms.  I therefore request the Court allow this warrant to be served at any time, day or night.

The signed warrant found "reasonable cause" to execute the warrant "at any time in the day or night."  Officers executed the warrant the next morning; the search yielded numerous items tying Huntley to illicit activity, including a firearm, ammunition, more than a kilogram of drugs (methamphetamine, heroin, and marijuana), and other indicia of drug-trafficking activity.  The warrant also led to the search of a storage unit, which yielded an additional twenty-four firearms.

A grand jury indicted Huntley (and others) on various firearm and drug crimes.  Claiming a lack of probable cause sufficient to support the warrant, Huntley moved to suppress all the evidence seized at his house.  Defendant argued the search warrant was "an anticipatory warrant" with two "triggering conditions" set forth in paragraph 28 of the affidavit—that Huntley was (1) home from California, and (2) in possession of methamphetamine.  To support this claim, Huntley pointed out that after the informant called the agent to tell him Huntley was home and in possession of the drugs, the agent directed the informant to collect the methamphetamine and deliver it to law enforcement.  Yet the informant did not do so; he instead left drugs in a mailbox for agents to retrieve, claiming he was with one of Huntley's associates and was unable to connect with officers in her presence.  From Huntley's perspective, law enforcement failed to verify with the informant that Huntley was indeed at his house and in possession of methamphetamine before they executed the warrant, and thus the warrant lacked probable cause.

The district court held a suppression hearing, at which the agent testified regarding the circumstances of law enforcement's investigation, the warrant application, and its execution. The district court denied defendant's motion in a written order. It assumed the warrant was anticipatory, found the triggering conditions had occurred, and even if they had not, the *Leon* good-faith exception applied. Huntley then pleaded guilty to drug trafficking and firearm counts, but reserved the right to appeal the suppression ruling. After the district court sentenced him to 260 months in prison, defendant appealed the district court's denial of his motion to suppress.

## II.

"In reviewing a district court's denial of a motion to suppress evidence, this court reviews the district court's findings of fact for clear error, and its legal conclusions *de novo*." *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004). We consider the evidence in the light most favorable to the government, *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008), and afford "great deference" to the magistrate judge's determination of probable cause. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (citation omitted). We also may affirm on a ground different from the district court as long as it is supported by the record. *See, e.g.*, *United States v. Stewart*, 729 F.3d 517, 524 (6th Cir. 2013).

## III.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. This appeal presents a good example of the difference between "traditional" and "anticipatory" search warrants. "Traditional warrants issue upon a showing of probable cause. By contrast, an anticipatory warrant only becomes effective upon the happening of some future event—

a 'triggering condition'—which establishes probable cause for the search." *United States v. Perkins*, 887 F.3d 272, 274 (6th Cir. 2018) (quoting *United States v. Grubbs*, 547 U.S. 90, 94 (2006)). By their very own terms, anticipatory warrants take "effect not upon issuance but at a specified future time." *United States v. Jackson*, 55 F.3d 1219, 1223 (6th Cir. 1995).

The case law illustrates how warrants set forth these "triggering conditions." Take the language of the warrant at issue in the Supreme Court's *Grubbs* decision: "execution of the search warrant *will not occur unless and until* the parcel containing child pornography has been received by a person(s) and has been physically taken into the residence." 547 U.S. at 94 (brackets omitted; emphasis added). Or consider materially similar words setting forth the search conditions in our decision in *United States v. Miggins*: "When the package containing the cocaine is delivered to this address and possession of the package is taken inside 2335 Cooper Terrace, as is anticipated, *then and only then* will the search warrant be executed." 302 F.3d 384, 394 (6th Cir. 2002) (brackets omitted; emphasis added); *see also Perkins*, 887 F.3d at 274; *United States v. Penney*, 576 F.3d 297, 302 (6th Cir. 2009).

Although the district court assumed for argument's sake that the warrant was anticipatory, we see no reason to do the same because the warrant did not authorize the search upon satisfaction of a future action. Absent is the typical language—"unless and until," "then and only then," "if and only if," "upon occurrence of," etc.—utilized to set forth a triggering condition. Rather, the warrant provides in no uncertain terms that Huntley's property "is believed to conceal" evidence of illegal activity, and the magistrate judge found that the affidavit supporting its issuance "establish[es] probable cause to search and seize the person or property." It therefore speaks only to a finding of probable cause by the magistrate judge upon its issuance, not upon an event to occur in the future.

Paragraph 28 does not change this conclusion. Viewed in the light most favorable to the government, paragraph 28 at best supports the agent's request for flexible timing to effectuate the warrant pursuant to Federal Rule of Criminal Procedure 41(e)(2)(A)(ii). Nothing about paragraph 28's "wish" to execute the warrant at a certain time—in order to minimize the well-founded risk to the safety of officers and others in light of Huntley's known possession and use of firearms—transforms this request into a future probable cause condition.

Moreover, even if this were an anticipatory warrant, Huntley did not overcome application of *Leon*'s good-faith rule.

Accordingly, the district court did not err by denying defendant's motion to suppress.

IV.

For these reasons, we affirm the district court's judgment.