14 F.3d 602
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Andre GOSHEN, Defendant-Appellant.
 No. 91-3905.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1993.
 
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; BERTELSMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Andre Goshen, following a jury trial, was convicted of one count of conspiring to possess and distribute cocaine and one count of distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1), and 21 U.S.C. Sec. 846, respectively. Goshen appeals, challenging (1) the sufficiency of the evidence against him, (2) the admissibility of certain statements and documents, (3) the jury instructions given and refused, and (4) the sentence imposed by the district court. For the reasons discussed below, we AFFIRM, in all respects, the judgment of conviction and the sentence imposed.
 
 I.
 
 2
 Goshen was one of ten persons indicted on charges that they conspired to possess and distribute, and did possess and distribute, cocaine from May 1989 to September 1990. Defendants Anthony Horn, Monica Horn and Margaret Grondin received cocaine from connections in Detroit and doled it out for distribution by others, including Goshen. A number of controlled drug purchases were made from several members of the conspiracy by government agents with the cooperation of certain individuals, including one Jerry Jaworski. On one of these occasions, an individual in a black and gold car belonging to Alice Goshen was observed performing counter-surveillance before and after a sale by Horn. In a second transaction, Goshen, driving the same black and gold car, apparently passed the cocaine to Horn, who had arrived in a separate car. Horn then passed the cocaine to Jaworski. Among the items seized from Horn's residence following his arrest was a ledger containing records of Horn's transactions. Among the entries was the name "Andy," a nickname shown to apply to Goshen.
 
 
 3
 Goshen presented no defense and the jury returned guilty verdicts against him on both counts. Goshen was sentenced to 188 months of imprisonment, to be followed by five years of supervised release.
 
 II.
 
 4
 Goshen raises a host of arguments which he contends, both individually and in the cumulative, merit reversal of his conviction. These arguments are discussed seriatim.
 
 A. Sufficiency of the Evidence
 
 5
 Goshen contends that the government's evidence was insufficient, as a matter of law, to support a finding beyond a reasonable doubt that he agreed to join or knowingly participated in the conspiracy to possess and distribute cocaine. Our review of such contentions is extremely limited. The conviction must stand if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 6
 In the present case, the government presented both direct and circumstantial evidence of Goshen's participation in the conspiracy. In one sale involving Horn, a car owned by Goshen's wife was seen at the scene of the transaction both before and after the sale was made. At another, Goshen was positively identified driving the same car and the fact that Goshen delivered the cocaine to be transferred is reasonably inferred from the account of the sale given by Jaworski and law enforcement agents. The government showed that Goshen had had a previous "business arrangement" with Horn and that Goshen owed Horn a large sum of money. Finally, a ledger seized from Horn's residence contains entries from which it may reasonably be inferred that Goshen was a link in the distribution chain. While no single piece of evidence conclusively establishes Goshen's guilt, the cumulative weight of the evidence is sufficient for a reasonable juror to conclude that Goshen was a knowing and voluntary participant in this conspiracy. Goshen's first point is denied. United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986).
 
 B. Intimidation of Witness Jaworski
 
 7
 Goshen contends that the district court and the prosecution so intimidated Jaworski, the government's informant and "cooperating buyer," that Goshen was denied due process. We disagree.
 
 
 8
 Jaworski was one of the government's key witnesses before the grand jury. When he appeared at trial, however, Jaworski was evasive and equivocating. The prosecution confronted Jaworski with his grand jury testimony but Jaworski, even after reviewing the transcript, denied the accuracy and even the fact of his testimony before the grand jury. At this point the trial judge interrupted the proceedings and dismissed the jury. In the ensuing colloquy, the court warned Jaworski of the dangers of perjury and appointed counsel to confer with him. The following day, after Jaworski had spoken with his attorney, the trial judge painstakingly explained to Jaworski exactly what was expected of him as a sworn witness:
 
 
 9
 If a question is put to you, because you are going to resume the witness stand, and you don't remember and that is the truth, that's what your answer should be.
 
 
 10
 If you don't know the answer and you say you don't remember, that is the same as refusing to testify. And if the Court is persuaded that you know the answer but you give as your answer that "I don't remember," the Court may consider holding you in civil contempt.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 On the other hand and balanced against it is the proposition that if one knows an answer and knowing the answer falsely says he doesn't know the answer or he doesn't remember, though he remembers and knows the answer, equally can be charged with perjury if it can be proved that he knows the answer.
 
 
 14
 The jury was recalled and Jaworski again took the stand, this time inculpating Goshen, among others.
 
 
 15
 The district court has the discretion to warn a witness that the judge believes is in danger of perjuring, or otherwise incriminating, himself. United States v. Arthur, 949 F.2d 211, 215 (6th Cir.1991). The Supreme Court has held, however, that due process is violated when a trial judge's warnings are so pointed and threatening that a defendant is deprived of a key witness in his defense. Webb v. Texas, 409 U.S. 95, 98 (1972).
 
 
 16
 Webb has no application to the present case. The due process right at issue there was a defendant's right to present a defense. Id. Here, Jaworski was a government witness of whose testimony the government was nearly deprived through artifice and, perhaps, perjury. The district court's warnings, while stern, were not coercive and were made to a witness who, by his own statements, did not understand that anyone was "serious" about his testifying truthfully or about wielding the sanctions of perjury if he did not. Goshen has no "right" to have others deprive the government of its case by lying on the witness stand. Short of "warnings" by a judge that are so threatening as to constitute coercion of favorable testimony rather than merely truthful testimony, we hold that a district court's discretion to caution a government witness before it will not be reversed.
 
 C. Hearsay and Confrontation
 
 17
 Goshen contends that the district court erred by admitting certain hearsay statements and documents into evidence. He argues that the requirements of the coconspirator exception to the hearsay rule were not met and that his rights of confrontation and due process were violated by allowing this evidence before the jury.
 
 
 18
 Goshen, despite broad assertions, only specifically challenges a single statement. He argues that Ms. Grondin's testimony to the effect that Horn told her Goshen owed him money from previous dealings should not have been admitted. We disagree.
 
 
 19
 First, it is not at all clear that this statement was offered to proved the truth of the matter asserted, see United States v. Van Daal Wyk, 840 F.2d 494, 498 (7th Cir.1988) (out-of-court statement that defendant owed coconspirator drug debt not offered to prove truth of the matter asserted), and, therefore the district court's decision to admit the evidence need not be reviewed under Federal Rule of Evidence 801(d)(2)(E). Nevertheless, the parties have focused their attention on the "coconspirators exception" to the rule against hearsay, as did the district court, and we affirm on that basis.
 
 
 20
 An out-of-court statement, made by a coconspirator during and in furtherance of the conspiracy, may be offered to prove the truth of the matter asserted. Fed.R.Evid. 801(d)(2)(E). To justify admission under this rule, the court must find, by a preponderance of the evidence, (1) that a conspiracy existed, (2) that the defendant was a member of that conspiracy when the statement was made, (3) that the statement was made in the course of and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171 (1987); United States v. Enright, 579 F.2d 980 (6th Cir.1978). The statement itself may be used to establish its admissibility. Bourjaily, 483 U.S. at 180-81. The district court's findings as to these elements are reviewed only for clear error. Id. at 181; United States v. Breitkreutz, 977 F.2d 214, 218 (6th Cir.1992).
 
 
 21
 All of the Bourjaily elements need not have been established prior to the statement's admission. Rather, district courts have considerable discretion in structuring the order of proof and, therefore, such statements may be conditionally admitted subject to subsequent proof by a preponderance of each of the Bourjaily elements. United States v. Mack, 837 F.2d 254, 258 (6th Cir.1988).
 
 
 22
 Review of the first two elements is unnecessary in cases where the defendant was found guilty of the conspiracy, in furtherance of which and during which it is contended that the challenged statement was made. In such cases, so long as the statement was made during the time the defendant was a member of the conspiracy, affirming the sufficiency of the evidence to support a finding of guilt beyond a reasonable doubt obviates the need to consider whether the same evidence is sufficient to support, by a preponderance, the existence of the first two Bourjaily elements. Accordingly, we hold the first two elements to have been established.
 
 
 23
 As to the third element, this court has stated:
 
 
 24
 A statement is made "in furtherance of" the conspiracy if it was intended to promote the conspiratorial objectives. It need not actually further the conspiracy to be admissible. Where the admissibility of coconspirators' statements presents a very close call, the district court's findings generally should not be disturbed.
 
 
 25
 United States v. Hitow, 889 F.2d 1573, 1581 (6th Cir.1989) (citations omitted).
 
 
 26
 In the present case, Ms. Grondin testified that Horn "told me that he [Goshen] was going to jail on a case, a previous case that he got in trouble for, and that when he got out of jail he [Goshen] owed him [Horn] some money." As noted above, this statement was not offered for the truth of the matter asserted, i.e., that Goshen owed a particular sum to Horn. Rather, the statement is offered to prove that Horn and Goshen knew each other, had worked with each other before and that Horn had some reason to believe that Goshen would do what Horn told him to do. Even assuming it is offered for its truth, the district court could reasonably believe that the statement was made to assure Grondin that Goshen was a suitable member of the conspiracy and that Horn knew him, trusted him to some degree and had reason to believe that Goshen would do what Horn told him. Therefore, the statement was made in furtherance of the conspiracy. See Van Daal Wyk, 840 F.2d at 499 (statement by coconspirator that defendant owed drug debt was made in furtherance of conspiratorial objectives). We hold that the district court's findings with respect to the admissibility of this evidence were not clearly erroneous.
 
 
 27
 Goshen also argues against the admission of the records seized from Horn's residence after his arrest. Also seized were canceled checks known to be in Horn's handwriting, which script resembled that in the ledger. The ledger contained the names of known conspirators together with numbers consistent with drug prices and quantities. Among these entries appears the name of "Andy" who, the government showed, was Andre Goshen.
 
 
 28
 As with Horn's out-of-court statement to Ms. Grondin, Goshen's argument fails in that the ledger was not offered to prove the proof of the matters asserted, i.e., that on such-and-so day Goshen owed some specific sum of money. Rather, the ledger was offered to prove that a relationship existed between Horn and Goshen. The relevance is that the appearance of a name in a conspirator's ledger dedicated to tracking the business of the conspiracy makes it more likely that the person named is a member of the conspiracy than if we did not know that fact. See Fed.R.Evid. 401. In short, what the ledger says is not relevant, the fact that Goshen appears in it is. If the ledger entry is not regarded as hearsay, and we do not believe it is, Goshen's arguments are misdirected and without merit.
 
 
 29
 Even if the ledger's entries are viewed as hearsay, the statements are admissible as authorized statements under the coconspirators exclusion to hearsay. There was sufficient evidence from which the district court could conclude that the statements in the ledger were made by a coconspirator, probably Horn if the government's assertions of handwriting similarity are to be believed, while Goshen was a member of the conspiracy. Additionally, because the entries allowed someone, probably Horn, to better manage the conspiracy's business, the entries were made in furtherance of the conspiracy. It is not essential that the government conclusively establish that Horn made the entries, so long as it readily appears that the entries were made by someone involved in the drug distribution scheme. Breitkreutz, 977 F.2d at 218-19. Thus, the ledger was admissible under Bourjaily and Rule 801(d)(2)(E).
 
 
 30
 Much of Goshen's argument with respect to the admissibility of the ledger is directed at a perceived lack of authentication. This contention lacks merit. The ledger was seized in a search of Horn's residence. The handwriting is similar to that appearing on Horn's canceled checks. Names or nicknames referred to in the ledger were otherwise shown to have been members of the conspiracy. Thus, there was sufficient evidence to conclude that the ledger was what it purports to be: a record of transactions made as part of a drug distribution scheme. The government need not conclusively establish the authorship of the records where the contents, and the circumstances of their seizure, justify the inference that the author was someone in the conspiracy. Breitkreutz, 977 F.2d at 219-20; United States v. McGlory, 968 F.2d 309, 329-31 (3d Cir.1992) (ledgers and "owe sheets" sufficiently authenticated by content and circumstances of seizure, despite uncertainty as to authorship), cert. denied, 113 S.Ct. 1388 (1993). Nothing more is required and the ledger was properly admitted.
 
 D. Instructions
 
 31
 Goshen argues that the district court erred in not instructing the jury to limit its use of the hearsay statements contained in Ms. Grondin's testimony. Rule 801(d)(2)(E) declare that a coconspirator's statement, made in the course of and in furtherance of the conspiracy, is not hearsay. Therefore, the statement is competent evidence for all purposes and may be used by the jury to determine the defendant's guilt or innocence. Bourjaily, 483 U.S. at 183-84. No limiting instruction was required and, therefore, the district court's failure to give one cannot be error.
 
 
 32
 Goshen also alleges error in the district court's failure to instruct the jury on (1) an isolated sale, (2) an addict witness, or (3) mere presence or association. We hold that the district court did not err in refusing these instructions.
 
 
 33
 Goshen contends that the district court should have instructed the jury on the principle that "a single sale does not a conspiracy make." Because Goshen did not request such an instruction at trial, our review is limited to a determination of plain error. United States v. Piccolo, 723 F.2d 1234, 1241 (6th Cir.1983) (en banc), cert. denied, 466 U.S. 970 (1984).
 
 
 34
 The "single sale" defense, though often invoked, is only applicable to two situations. See United States v. Renfro, 620 F.2d 569, 575 n. 5 (6th Cir.), cert. denied, 449 U.S. 902 (1980). First, where the buyer and the seller are the only two participants in the charged conspiracy and they engaged in but a single sale, the mere fact that the sale necessarily entails some form of agreement is insufficient to support a charge of conspiracy. Second, where the buyer is a minor figure in a complex conspiracy and participates in but a single sale, it is reasonably to be doubted that the defendant did not know the scope of the conspiracy and, therefore, was not a member of it. Id. There is nothing "isolated" about Goshen's participation and, as neither of the Renfro situations are presented here, the district court's failure to give such an instruction was not error, plain or otherwise.
 
 
 35
 Goshen also contends that the district court erred in refusing to give an "addict-informer" instruction. On appeal, we review the jury instructions as a whole to determine whether the trial court fairly and adequately informed the jury of the law and the relevant considerations to aid the jury in reaching a just decision. United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984). "A trial court's refusal to give a requested jury instruction is reversible error only if the instruction is: 1) correct; 2) not substantially covered by the actual jury charge; and 3) so important that failure to give it substantially impairs the defendant's defense." United States v. Sassak, 881 F.2d 276, 279 (6th Cir.1989).
 
 
 36
 Here, the witness of whose addiction Goshen complains was Jaworski. Jaworski's testimony inculpating Goshen was corroborated by law enforcement officers who witnessed the various transactions. Goshen's attorney was allowed to cross-examine Jaworski extensively regarding his drug use and to comment on that drug use in final argument to the jury. The district court instructed the jury on the relevant considerations of witness credibility as well as accomplice and informer testimony. The failure to do more was not error. United States v. Warner, 971 F.2d 1189, 1203 (6th Cir.1992) (addict-informer instruction not necessary where witness' testimony corroborated, witness' drug use argued to jury and witness credibility instructed upon); United States v. Brown, 946 F.2d 1191, 1195 (6th Cir.1991) (no per se rule requiring "addict-informer" instruction; error depends on circumstances of each case).
 
 
 37
 Finally, Goshen argues that the district court erred by not instructing the jury that "mere presence" at the scene of a crime, or "mere association" with criminals, is insufficient to establish guilt beyond a reasonable doubt. As discussed above, however, the government's case consisted of proving, among other things, Goshen's presence at the scene of two overt acts and long-term "business" association with one of the leaders of the conspiracy. While the district court may give this type of instruction when association or presence is all the government has shown, Goshen cites no cases requiring such an instruction when both association and presence have been shown, in addition to other circumstances indicating guilt.
 
 
 38
 Even if the instructions could have been given, a failure to do so would not constitute reversible error in this case. If the jury believed, despite the evidence to the contrary, that Goshen was merely an associate of conspirators or was merely present at the scene of a crime, it could not have found him guilty under the court's instructions requiring a finding that Goshen knowingly and voluntarily participated in the conspiracy. While a specific instruction may have helped Goshen's counsel make his argument to the jury, that alone is insufficient to find reversible error where the instructions actually given adequately present the issues and the law. Sassak, 881 F.2d at 279. We hold that the instructions given were proper and that no error appears in the district court's decision to refuse Goshen's additional instructions.
 
 E. Sentencing
 
 39
 Goshen maintains that the sentencing court erred in attributing to him, for purposes of calculating his sentence, more cocaine than was involved in the single sale to which he was connected. In sentencing, the government bears the burden of establishing the amount of contraband to be attributed to the defendant by a preponderance of the evidence. United States v. Sims, 975 F.2d 1225, 1242 (6th Cir.1992), cert. denied, 113 S.Ct. 1315 (1993).
 
 
 40
 This court has rejected the argument that a defendant, despite his conviction for conspiracy to possess and distribute cocaine, can only be sentenced for the amount of cocaine that defendant personally possessed or distributed. Id. at 1242; United States v. Hodges, 935 F.2d 766, 773-74 (6th Cir.), cert. denied, 112 S.Ct. 317 (1991). The issue is not what amount the defendant personally moved, but rather what amount of drugs was reasonably foreseeable to the defendant as a member of the conspiracy. Sims, 975 F.2d at 1244. If reasonably foreseeable, "the entire quantity of cocaine attributable to a distribution enterprise is included in determining the base offense level of a conspirator." United States v. Blankenship, 954 F.2d 1224, 1228 (6th Cir.), cert. denied, 113 S.Ct. 288 (1992). The determination of foreseeability is a question of fact, to be determined by the district court according to the preponderant weight of the evidence before it and will be reversed only upon this court's determination that the finding was clearly erroneous. Sims, 975 F.2d at 1242.
 
 
 41
 In the present case, as noted above, the government established Goshen's participation beyond a single sale. Therefore, to conclude as that district court did, that Goshen could reasonably have foreseen that the conspiracy would deal in more drugs than were involved in that single sale is not clearly erroneous. Goshen has not advised this court of the total amount of cocaine attributed to him in sentencing. We note in passing, however, that the two counts upon which he was convicted attributed to Goshen transactions involving some 46 grams of cocaine. The combined total of all the transactions charged against all of the members of the conspiracy exceeds 9.4 kilograms, plus an additional 29 ounces.
 
 
 42
 Inasmuch as we hold that the district court was not clearly erroneous in holding Goshen responsible for more than the one gram he tacitly admits to, and inasmuch as Goshen doesn't say what amount for which he was actually held responsible, any further review of this point is, by his own neglect, impossible. The sentence is, therefore, affirmed in all respects.
 
 III.
 
 43
 For these reasons, we AFFIRM, in all respects, the judgment of conviction and the sentence imposed.
 
 
 
 *
 Honorable William O. Bertelsman, United States Chief District Judge for the Eastern District of Kentucky, sitting by designation