RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 13-1761

*v.*

RICKY BROWN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cr-20281-1—Denise Page Hood, District Judge.

Argued: July 31, 2014

Decided and Filed: September 11, 2015

Before: CLAY and STRANCH, Circuit Judges; BLACK, District Judge.[*]

---

## COUNSEL

**ARGUED:** Dennis G. Terez, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Stephanie M. Hays, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Dennis G. Terez, Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Stephanie M. Hays, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

STRANCH, J., delivered the opinion of the court in which BLACK, D.J., joined. CLAY, J. (pp. 19–20), delivered a separate dissenting opinion.

---

[*]The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

1

---

**OPINION**

---

STRANCH, Circuit Judge.  A jury convicted Ricky Brown of possession with intent to distribute marijuana, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm after a previous conviction of a felony offense.  On appeal, Brown challenges the denial of his motion to suppress evidence seized from his residence pursuant to a search warrant and two evidentiary rulings made by the district court.  Although we note our concern that the search warrant affidavit supplied a tenuous nexus between drug trafficking and Brown's residence, we conclude under the totality of the circumstances that there was probable cause for the magistrate judge to issue the warrant.  We also hold that the district court properly admitted a "drug ledger" into evidence at trial and excluded evidence concerning Brown's Michigan medical marijuana license.  Accordingly, we AFFIRM the district court.

## I.  BACKGROUND

On March 30, 2011, DEA Agent Jeremy Fitch applied for a search warrant to search Brown's residence on Moross Road in Detroit, Michigan.  The affidavit in support of the search warrant provided the following facts.

On March 8, 2011, a cooperating witness, identified as DEA1, provided information concerning the heroin trafficking activities of Marzell Middleton to DEA Detroit Agents and Task Force Officers assigned to Enforcement Group 3.  DEA1 identified Middleton as a heroin trafficker in the Detroit metropolitan area and provided two cell phone numbers that DEA1 had used to contact Middleton.  DEA1 further identified Middleton's residence on Helen Street in Detroit and stated that this residence served as the drug distribution point for Middleton.

On March 8, at the direction of DEA agents, DEA1 made a series of consensually recorded phone calls to Middleton to set up a purchase of one-half kilogram of heroin.  Surveillance units were posted at Middleton's residence before, during, and after the phone calls were made.  At approximately 5:30 p.m., agents noticed a Chevrolet Silverado parked at the

residence. At approximately 5:46 p.m., Middleton agreed over the phone to deliver the heroin to DEA1 at a predetermined location in Monroe, Michigan.

At approximately 7:52 p.m., DEA1 placed another consensually recorded phone call to Middleton, who advised DEA1 that he was waiting for someone to arrive and then he would leave in "ten minutes" to meet with DEA1 and deliver the heroin. At approximately 7:30 p.m. (*before* the previously-described phone call), a Yukon Denali towing a black cargo trailer arrived at Middleton's Helen Street residence. Surveillance officers watched as three males got out of the Yukon and entered the residence through the north entry door. At approximately 7:50 p.m., the three males left the residence through the same door. One man had a large, dark-colored object in his hand, which he placed in the bed of the Chevrolet Silverado. The Silverado and the Yukon departed the residence and traveled to a gas station. After both vehicles were fueled, the men traveled together on Interstate 94 west to southbound I-75 into the Monroe, Michigan area.

Because the agents believed heroin was being transported to DEA1, they arranged for Michigan State Police (MSP) Troopers working in marked cars to execute simultaneous traffic stops of the Silverado and the Yukon. At approximately 9:00 p.m., MSP Trooper Peterson conducted a probable cause traffic stop of the Silverado and identified the sole occupant as Steven Patrick Woods. Woods was driving on a suspended Michigan driver's license and verbally consented to a search of the truck. A search revealed a black, plastic Dewalt power tool case in the bed of the truck. Inside the case was a clear plastic bag containing an off-white substance weighing approximately 565 gross grams. A field test indicated the presence of heroin. Trooper Peterson placed Woods under arrest for possession of heroin.

At approximately 9:01 p.m., MSP Troopers Kiser and Ziecina stopped the Yukon Denali. Trooper Ziecina identified the driver as Middleton and the passenger as the defendant, Brown. Both were arrested for attempted delivery of the heroin transported by Woods in the Silverado. Trooper Ziecina recovered four cell phones from the interior of the Yukon during an inventory search. One phone was assigned (313) 449-6872, the number DEA1 had used to contact Middleton to arrange the heroin delivery. Another phone was assigned the number DEA1 told agents was Middleton's second cell phone, (313) 461-4913. Agent Fitch concluded that the

other two cell phones, (313) 254-8330 and (313) 564-9054, belonged to Brown because one of them, (313) 564-9054, listed Middleton's two cell phone numbers as contacts under "M Z."

Following the arrests, all three men were booked at the MSP Post in Monroe. In answer to standard booking questions, Brown provided a residential address on Moross Road in Detroit. He possessed a Michigan driver's license listing the Moross Road address as his residence. Brown also possessed $4,813 in currency, which was seized for forfeiture under Michigan state law. Agent Fitch averred, based on his training and experience, that the large amount of unsecured cash found in Brown's possession was consistent with drug trafficking proceeds.

Task Force Officer Powell obtained a state search warrant for Middleton's residence on Helen Street. The warrant was executed at approximately 3:10 a.m. on March 9. The search turned up approximately 90 gross grams of suspected heroin. A 2002 GMC Yukon, bearing Michigan license plate 3KHR97 and registered to Brown, was parked on the street in front of the residence.[1] MSP Trooper Unterbrink allowed a drug dog to walk around the vehicle and climb into it. The dog alerted to the odor of narcotics inside Brown's vehicle. Agents seized the 2002 Yukon under Michigan forfeiture laws.

On March 17, nine days after Brown was arrested, Agent Fitch obtained a federal search warrant to search the contents of the four cell phones seized from the Yukon Denali on March 8. On one of the phones believed to belong to Brown, (313) 254-8330, Agent Fitch located a text message: "He said 1175 or 1125 for one." Based on his training and experience, Agent Fitch averred that the text message was consistent with Detroit-area pricing for one ounce of cocaine. Sprint-Nextel disclosed that the subscriber information for the phone was "BOOST MOBILE." According to Agent Fitch, boost mobile phones do not require legitimate subscriber information and can be purchased and used anonymously.

Agent Fitch further averred that he conducted a search of Brown's criminal history using the NCIC system. He learned that Brown was arrested by the Detroit Police in July 1996 for delivery/manufacture of felony dangerous drugs, but he was acquitted on the charges. Brown

---

[1]This Yukon was different from the Yukon Denali occupied by Middleton and Brown at the time of the traffic stop on March 8.

was arrested by the Detroit FBI in May 1999 for conspiracy to distribute marijuana, was convicted, and served time in federal prison.

To summarize the contents of his affidavit, Agent Fitch averred that Brown was an active participant in the attempted delivery of heroin on March 8, 2011, he had a felony drug trafficking history, he resided on Moross Road in Detroit, an MSP drug dog had alerted to the odor of narcotics in Brown's vehicle, and the vehicle was registered to Brown at his home on Moross Road. Agent Fitch further averred that there was probable cause to believe that the residence on Moross Road would contain the "fruits or other evidence of a conspiracy to distribute heroin" involving Brown, Middleton, Woods, and other co-conspirators, in violation of federal law. More specifically, Agent Fitch averred that there was probable cause to believe that the Moross Road residence would contain:

> illegal drugs, drug ledgers, wrappers and drug packaging from heroin distribution that may have been divided up inside of the residence, documents identifying ownership or occupancy of the residence, documents of ownership of vehicles used by BROWN, documents and receipts for the purchase of cell phones used by BROWN, cellular telephones, large amounts of currency, money counters, financial instruments, firearms, scales, and drug related paraphernalia (further described in **Attachment B**).

R. 15-1, Page ID 63. Attachment B described the items sought in greater detail.

Agent Fitch disclosed in the search warrant affidavit that he had been employed as a DEA Special Agent for approximately eight months, and based on his training and experience and that of other officers with whom he had discussed the case, drug traffickers tend to keep in their residences and vehicles the types of items for which the search warrant was requested. In paragraphs 2A. through 2J. of the affidavit, Agent Fitch described the manner and means by which drug traffickers generate, maintain, and conceal evidence related to drug trafficking. Attachment A to both the affidavit and the search warrant specifically described the residence on Moross Road that was the "Target Premises" to be searched. A federal magistrate judge issued the search warrant on March 30, 2011, twenty-two days after Brown's arrest.

DEA agents executed the search warrant at Brown's residence on March 31. On the floor of the closet in the master bedroom, Agent Moore found a loaded 9 millimeter Smith and Weston semiautomatic pistol with 15 live rounds in the magazine. In the same closet on a shelf to the

left, he located a glass jar containing stalks of marijuana and two or three clear plastic baggies containing marijuana packaged for distribution. On another shelf on the opposite side of the closet, Agent Moore found a second glass jar filled with loose marijuana. Together the two jars held 60 grams of marijuana, enough for about 120 marijuana cigarettes. Also in the closet next to one of the jars of marijuana, Agent Moore found a State Farm insurance document showing Brown's name, the Moross Road address, and the VIN number and registration for the 2002 Yukon that agents seized at Middleton's home on Helen Street shortly after Brown's arrest on March 8.

In the top drawer of a dresser in the master bedroom, agents found two full boxes of Remington 9 millimeter ammunition for pistols, one partial box of ammunition for a rifle or AK-47, and a receipt for a $500 cash payment to the Michigan state treasury bearing Brown's name. In the second or third drawer of the dresser, agents found a digital scale, and on top of the dresser they found a box of 12-gauge shotgun shells. Elsewhere in the master bedroom, agents discovered $5,805 cash in a small, black tote bag, a Michigan certificate of title for the 2002 Yukon in Brown's name, a utility bill for the Moross Road residence in Brown's name, and a hand-written document—purportedly a drug ledger—listing names and what appeared to be gram drug quantities. A loaded 12-gauge shotgun was found upstairs.

Brown moved to suppress the evidence seized during the search of his home on the ground that Agent Fitch's affidavit in support of the search warrant failed to establish probable cause to search the residence and the information in the affidavit was stale. The district court heard argument on the motion, but did not conduct an evidentiary hearing. Looking only to the four corners of Agent Fitch's affidavit, the district court denied the motion to suppress, finding that the affidavit was sufficient to establish probable cause and that the evidence was not stale. The district court further ruled that the *Leon* good faith exception would apply even if the affidavit failed to establish probable cause.

Brown was tried before a jury on five charges: possession with intent to distribute heroin, conspiracy to distribute heroin, possession of a firearm after a previous conviction of a felony offense, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug trafficking crime. The jury acquitted Brown on the heroin charges, but

convicted him on the marijuana and firearm charges. The district court imposed a sentence of 117 months of imprisonment, and this appeal followed.

## II. ANALYSIS

Brown raises three arguments on appeal. He contends that the district court erred in denying his motion to suppress, the court erred in admitting the "drug ledger" into evidence at trial because the government failed to authenticate it properly, and the court erred in excluding evidence of Brown's Michigan medical marijuana license. We turn first to the suppression issue.

### A. Motion to Suppress

In reviewing the denial of a motion to suppress where the district court did not hold an evidentiary hearing, we "review *de novo* the court's legal conclusion that the affidavit provided probable cause." *United States v. Brown*, 732 F.3d 569, 572 (6th Cir. 2013). Given our *de novo* standard and the fact that our review focuses on the probable cause determination of the magistrate judge in issuing the search warrant, "we owe the district court's conclusion no particular deference." *Id.* Our court has "long held," however, that the probable cause determination of a magistrate judge should be reversed only if the court arbitrarily exercised its discretion. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The "chief evil" deterred by the Fourth Amendment is the physical invasion of the home. *Payton v. New York*, 445 U.S. 573, 585 (1980); *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003). Indeed, the right of a citizen to retreat into the home and "'there be free from unreasonable governmental intrusion'" stands at the core of the Fourth Amendment. *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). "One of the touchstones of the reasonableness requirement is that the police must generally obtain a warrant based upon a judicial determination of probable cause before entering the home." *Ziegler v. Aukerman*, 512 F.3d 777, 785 (6th Cir. 2008). The job of

the magistrate judge presented with a search warrant application is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Our duty as a reviewing court is "to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." *Id.* (internal quotation marks omitted).

### 1. Nexus Requirement

Because the Fourth Amendment requires a search warrant to describe particularly the place to be searched and the persons or things to be seized, the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). If the affidavit does not present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place, a magistrate judge may not find probable cause to issue a search warrant. *Id.* Whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of circumstances presented. *See Gates*, 462 U.S. at 238; *Brown*, 732 F.3d at 573.

We have found adequate support for a search warrant where a confidential informant made at least six drug purchases from the defendant and co-defendant, all recorded by the police; the confidential informant was on the premises of the defendant's residence on two occasions when the police heard a drug transaction through monitored audio surveillance; and, in the 72 hours before the search warrant application, the confidential informant was on the defendant's premises and observed the defendant and a co-defendant possess a quantity of cocaine for distribution. *United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998). We upheld issuance of the search warrant for the defendant's residence because "[k]nowledge of illegal drug activities, obtained by law enforcement officials through a confidential informant and independent surveillance, supports a district court's finding of probable cause to support the issuance of a warrant." *Id. See also United States v. May*, 399 F.3d 817, 823–25 (6th Cir. 2005) (upholding search warrant where affidavit contained independent police corroboration of statements made by confidential informant about drug trafficking taking place at defendant's residence to be

searched).  Agent Fitch presented no such evidence to the magistrate judge to support the search warrant issued in this case.

Nonetheless, we must judge the affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."  *Allen*, 211 F.3d at 975.  Agent Fitch's affidavit disclosed to the magistrate judge that Brown had been arrested twenty-two days earlier on March 8, 2011, after he, Middleton, and Woods attempted to deliver one-half kilogram of heroin to DEA1, a cooperating witness.  Police seized four cell phones from Middleton and Brown during their arrests; two of the cell phones belonged to Middleton because they matched the phone numbers used by DEA1 to contact Middleton to set up the drug purchase; and the two cell phones believed to belong to Brown listed Middleton's phone number as a contact.  Brown possessed $4,813 in currency at the time of his arrest.  A search of Middleton's home pursuant to a state search warrant a few hours after the arrests uncovered another 90 grams of heroin.  The 2002 Yukon parked on the street outside Middleton's residence during the search was registered to Brown at the same address shown on Brown's driver's license and given by Brown as he was booked following his arrest.  During a search of Brown's Yukon, a drug dog alerted to the odor of narcotics inside the vehicle, and the NCIC database showed that Brown had a previous federal drug conviction for conspiracy to distribute marijuana and a previous felony drug arrest.[2]  We turn to our caselaw to determine whether these facts demonstrate the necessary nexus between the evidence sought and the place to be searched.

Several of our cases recognize that a magistrate judge is entitled to draw a reasonable inference that evidence of a crime is likely to be found where *known* drug traffickers reside.  We made this point in *Jones*, 159 F.3d at 974–75, and again in *United States v. Miggins*, 302 F.3d 384, 393–94 (6th Cir. 2002).  In *Miggins*, we followed cases decided by several of our sister circuits which permit the drawing of a reasonable inference that evidence of a crime is likely to be discovered in the residences of known drug traffickers.  *Id.* (and cases cited therein).  We reversed the suppression order in *Miggins*, finding a sufficient nexus between known drug

---

[2]The dissent suggests that "[t]he only available bases for the search of Defendant's residence were the fact that Defendant is a previously convicted drug dealer, and the agent's assertion that evidence of drug dealers' illicit activities can usually be found at their places of residence."  Dissent at 1.  Were that the case before us, we would agree that the affidavit was inadequate to show the requisite probable cause.  That viewpoint, however, does not take into account all of the relevant information known to Agent Fitch that we have just summarized.

trafficking and the defendants' apartment to warrant issuance of a search warrant. *Id.* We again upheld a search warrant for a known drug dealer's residence in *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009), where we followed our prior decision in *Jones*. We also upheld a search warrant for the residence of a methamphetamine manufacturer after he was arrested working at a methamphetamine laboratory located on a different property. *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007) (relying on *Miggins*, where "we held, following a long line of precedents, that a sufficient nexus existed to search the residence of a known drug dealer after he had been arrested for possession of cocaine.").

Our cases also illustrate situations in which the nexus is insufficient to support a search warrant. In *United States v. McPhearson*, 469 F.3d 518, 524–25 (6th Cir. 2006), we affirmed a suppression order where there was no evidence in the warrant affidavit that the defendant was a known drug dealer and there was no evidence connecting drug trafficking to the defendant's residence. In that case, police went to McPhearson's residence to arrest him on an outstanding warrant for simple assault. *Id.* at 520. The police completed the arrest on the front porch and escorted McPhearson to the squad car parked at the street. *Id.* There, the police searched McPhearson incident to arrest and found crack cocaine in his pants pocket. *Id.* The officers asked McPhearson to consent to a search of his house, but he refused. *Id.* at 520–21. The police obtained a search warrant for the residence from a state juvenile court judge. *Id.* at 520, 522.

The district court suppressed the evidence obtained from McPhearson's home, and we affirmed that decision. *Id.* at 522, 527. Because the search warrant affidavit stated no more than that McPhearson resided at the address and was arrested there on a non-drug offense with a quantity of crack cocaine on his person, we concluded that "[t]hese averments were insufficient to establish probable cause because they do not establish the requisite nexus between the place to be searched and the evidence to be sought." *Id.* at 524. We rejected the government's argument that McPhearson's arrest outside his home with drugs in his pocket was sufficient to establish a fair probability that police would find evidence of wrongdoing inside his home:

> This inference can be drawn permissibly in some cases, as evidenced by *United States v. Miggins* and the cases cited therein. 302 F.3d 384, 393–94 (6th Cir. 2002). But in all those cases, the affidavits contained an additional fact that permitted the magistrate to draw the inference that evidence of wrongdoing would be found in the defendants' homes—namely, the independently corroborated fact

that the defendants were known drug dealers at the time the police sought to search their homes. *See, e.g., United States v. Feliz*, 182 F.3d 82, 87–88 (1st Cir. 1999) (finding it reasonable to infer that a known drug dealer would store evidence of his trade at home); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999) ("[I]n issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept . . . and . . . in the case of drug dealers evidence is likely to be found where the dealers live."). That fact was absent from the affidavit in this case. McPhearson was not a known drug dealer: his prior convictions were for property crimes, and the warrant on which the police arrested him was for simple assault. In the absence of any facts connecting McPhearson to drug trafficking, the affidavit in this case cannot support the inference that evidence of wrongdoing would be found in McPhearson's home because drugs were found on his person.

*Id.* at 524–25.

In *United States v. Frazier*, 423 F.3d 526, 529–30 (6th Cir. 2005), the police employed confidential informants to make controlled drug purchases from the residence of a suspected drug trafficker, Christopher Frazier. Although one of the confidential informants had worn a wire and recorded two of the controlled buys, the search warrant affidavit did not contain this information, and the agent inadvertently failed to add it to the affidavit as directed by the magistrate judge. *Id.* at 530. On a challenge to the search and seizure of evidence pursuant to the search warrant, we concluded that the affidavit failed to contain facts supporting the reliability of the confidential informants or to provide independent corroboration of the information given by them. *Id.* at 532. Distinguishing *Miggins*, *Jones*, and other cases, we stated that none of them "supports the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Id.* at 533. "Where, as here, the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnesses illegal activity on the premises of the proposed search), the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *Id.* We nonetheless upheld the search and seizure under the *Leon* good faith exception. *Id.* at 533–38.

It is a close question whether Agent Fitch's affidavit sets forth a sufficient nexus between drug trafficking and Brown's residence to support issuance of the search warrant. The affidavit contained no evidence that Brown distributed narcotics from his home, that he used the residence

to store narcotics, or that any suspicious activity had taken place there. The affidavit did not suggest that a reliable confidential informant had purchased drugs there, that the police had ever conducted surveillance at Brown's home, or that the recorded telephone conversations linked drug trafficking to Brown's residence.

Unlike the affidavits discussed in *Frazier* and *McPhearson*, however, Agent Fitch's affidavit presented the magistrate judge with more than an uncorroborated suspicion that Brown was a drug dealer. Key to the issuance of this search warrant was Brown's status as a previously-convicted drug dealer, coupled with the police investigation of Brown's involvement in ongoing trafficking of heroin and possibly cocaine, the drug dog's detection of narcotic odor in Brown's 2002 Yukon that was parked at Middleton's house on the night of Brown's arrest, and the registration of the 2002 Yukon to Brown at the Moross Road residence. Under our cases, the magistrate judge could reasonably infer from these facts that Brown had recently used the Yukon registered to his home on Moross Road to ferry narcotics and that there was a fair probability that a search of his residence would turn up contraband or evidence of a crime.

Though a close question, under these circumstances, we find that the affidavit was not based on the singular fact of Brown's previous drug conviction but included adequate reliable evidence providing the necessary connection between ongoing drug activity and Brown's home. *See Gates*, 462 U.S. at 238. *See also United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) ("[T]his Court's precedents establish that a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence. . . . When, however, the only evidence of a connection between illegal activity and the residence is unreliable, such as uncorroborated statements by a confidential informant, then a warrant may not issue allowing the search of the residence."). We conclude, under the totality of the circumstances, that the affidavit was sufficient to provide probable cause to support issuance of the search warrant.

### 2. *Staleness*

We do not agree with Brown that the information in Agent Fitch's affidavit was stale. Staleness is measured by the circumstances of the case, not by the passage of time alone. *Sgro v. United States*, 287 U.S. 206, 210–11 (1932). We examine several variables, including "the

character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (internal quotation marks omitted).

The character of the crime suggests an ongoing drug trafficking conspiracy, of which Brown was a member. *See United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) ("Evidence of ongoing criminal activity will generally defeat a claim of staleness."). Brown was not nomadic; rather, he appeared to be entrenched in a secure operational base located on Moross Road, the residence he listed on his driver's license and gave to the booking officer following his arrest. In addition to drugs and firearms, Agent Fitch sought business records tying Brown to the 2002 Yukon and to drug trafficking. Business records are a type of evidence that an agent ordinarily could expect would be kept for long periods of time. *See United States v. Abboud*, 438 F.3d 554, 573–74 (6th Cir. 2006). In light of the pertinent factors, we conclude that the information known to Agent Fitch did not become stale in the 22 days between Brown's March 8 arrest and the March 30 application for a search warrant. *See Spikes*, 158 F.3d at 924 (determining that information obtained "over a four-year period of time" was not stale where officers provided recent corroboration of ongoing drug trafficking activity).

### 3. Good faith exception

Even if Agent Fitch's affidavit lacked sufficient facts to establish probable cause to search Brown's home, we nonetheless conclude that the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984). The officers who executed the search relied in good faith on the search warrant issued by a neutral and detached magistrate judge. *Id.* at 922; *Carpenter*, 360 F.3d at 595–97.

"[W]hen an agent acts with an objectively reasonable good faith belief that his conduct is lawful or when his conduct involves simple, isolated negligence, the exclusionary rule's deterrence rationale "cannot pay its way." *Davis v. United States*, 131 S. Ct. 2419, 2427–28 (2011) (internal quotation marks omitted). But "[w]hen the police exhibit 'deliberate,'

'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion [of evidence] is strong and tends to outweigh the resulting costs." *Id.* at 2427 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). In *Davis*, the Supreme Court held that the exclusionary rule does not apply if a police officer conducts a search in objectively reasonable reliance on binding appellate precedent. *Id.* at 2428–29. When Agent Fitch sought the search warrant for Brown's residence, our cases taught (as they do still) that the police may seek a warrant to search the residence of a known drug dealer where evidence—such as involvement in ongoing drug trafficking—ties the alleged criminal activity to the dealer's residence because that nexus results in a fair probability that contraband or evidence of a crime will be found in the home. *See Gunter*, 551 F.3d at 481; *Miggins*, 302 F.3d at 393–94; *Jones*, 159 F.3d at 974.

This is not a case like *McPhearson*, where the good faith exception did not apply because the affidavit supporting the search warrant was "so vague as to be conclusory or meaningless." *McPhearson*, 469 F.3d at 527 (internal quotation marks omitted). The case is also not like *United States v. Hython*, 443 F.3d 480, 489 (6th Cir. 2006), where the search warrant affidavit was so "patently insufficient" that "[n]o well-trained officer could have reasonably relied on" it, or *United States v. Laughton*, 409 F.3d 744, 748, 751 (6th Cir. 2005), where "[n]o reasonable officer could have believed" that the "bare bones" affidavit was sufficient to establish probable cause to search. Although Agent Fitch's affidavit presents a close case, we do not find it to be clearly insufficient.

Moreover, Brown produced no evidence that Agent Fitch committed any misconduct in applying for the search warrant or even that he acted negligently. *See Davis*, 131 S. Ct. at 2428. Accordingly, the *Leon* good faith exception applies. *See id*. at 2427–29; *Herring*, 555 U.S. at 147–48; *United States v. Kinison*, 710 F.3d 678, 685–86 (6th Cir. 2013) (applying *Davis*); *United States v. Fisher*, 745 F.3d 200, 203 (6th Cir. 2014) (same).

In light of our precedents, the affidavit provided sufficient facts to permit the magistrate judge to issue the search warrant. Because Brown has not persuaded us that reversal is warranted, we affirm the district court's decision to deny the motion to suppress.

**B. Evidentiary rulings at trial**

Brown makes three challenges to the trial evidence.  He argues that the government did not properly authenticate a "drug ledger" under Federal Rule of Evidence 901(a), and he contends, for the first time on appeal, that the document was inadmissible hearsay.  He also argues that the district court should have allowed him to introduce evidence of his Michigan medical marijuana license because it was relevant to the issue of intent.

We review a district court's evidentiary ruling for an abuse of discretion if an objection has been preserved.  *United States v. Clay*, 667 F.3d 660, 666 (6th Cir. 2009).  We review for plain error if no objection is made.  *United States v. Lopez-Medina*, 461 F.3d 724, 746 (6th Cir. 2006).  Plain error exists if there is an "(1) error (2) that was obvious or clear; (3) that affected defendant's substantial rights; and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008).

*1. Hearsay*

Having examined the trial record, we are persuaded that the government offered the "drug ledger" as circumstantial evidence of a "tool of the trade" to prove that Brown was involved in illegal drug trafficking. *See United States v. Mendez*, 514 F.3d 1035, 1045 (10th Cir. 2008); *United States v. Goshen*, No. 91-3905, 1993 WL 503728, *5 (6th Cir. Dec. 8, 1993). Because the government did not offer the document for the truth of the matter asserted, it was not hearsay and the district court did not plainly err in admitting it into evidence. *Cf. Lopez-Medina*, 461 F.3d at 746 (observing drug ledger was offered for truth of the matter asserted because government used it to prove that the names and numbers listed represented actual sales of the listed quantity of drugs to the specified person).  Several circuits have employed similar reasoning to affirm the admission of drug ledgers into evidence.  See *United States v. Gonzales*, 307 F.3d 906, 910 (9th Cir. 2002); *United States v. Echeverri*, 982 F.2d 675, 680 (1st Cir. 1993); *United States v. Bohmont*, 413 F. App'x 946, 955–56 (8th Cir. 2010) (per curiam); *United States v. Charles*, 366 F. App'x 532, 543 (5th Cir. 2010).

Having concluded that the document was not hearsay, we need not address Brown's argument that no hearsay exception applied.  Further, because Brown concedes that the "drug

ledger" is nontestimonial in character, the Confrontation Clause, which applies only to testimonial evidence, is inapplicable and the rules of evidence alone govern the document's admissibility. *See Davis v. Washington*, 547 U.S. 813, 823–25 (2006); *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009); *United States v. Arnold*, 486 F.3d 177, 192–93 (6th Cir. 2007) (en banc).

*2. Authentication*

Brown next challenges the district court's ruling that the identity of the person who drafted or kept the handwritten "drug ledger" went to the weight, not the admissibility, of the evidence. Rule 901(a) requires the proponent of a document to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." A document can be authenticated by evidence of "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(1), (4). "[A] document . . . may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him." Fed. R. Evid. 901(b)(4) advisory committee note; *United States v. Jones*, 107 F.3d 1147, 1149 (6th Cir. 1997).

An agent who participated in the search of Brown's residence identified the "drug ledger" as a document recovered from the master bedroom, where law enforcement officers also recovered marijuana packaged for sale, a loaded handgun in close proximity to the marijuana, ammunition, a digital scale, receipts and bills bearing Brown's name, and various insurance and vehicle documents in Brown's name tying him to the 2002 Yukon found parked at Middleton's home. An agent with extensive experience in examining drug ledgers described for the jury the characteristics of the document that indicated it was a "drug ledger," and another agent linked Brown to the document through testimony that several contacts listed in one of Brown's cell phones matched names listed on the "drug ledger." The government thus produced sufficient circumstantial evidence to authenticate the "drug ledger" and justify its admission into evidence. *See United States v. Crosgrove*, 637 F.3d 646, 658 (6th Cir. 2011). An expert opinion finding that the handwriting on the document was Brown's was not necessary to authenticate the document. *See United States v. Kalymon*, 541 F.3d 624, 632 (6th Cir. 2008).

*3. Exclusion*

Finally, we address Brown's argument that the district court erred in excluding evidence of his Michigan medical marijuana license. He argues for the first time on appeal that the evidence was relevant to the *mens rea* element of possession with intent to distribute marijuana. While we could decline to reach this argument, we will address it briefly.

The federal Controlled Substances Act classifies marijuana as a Schedule I drug because of its "high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Gonzales v. Raich*, 545 U.S. 1, 14 (2005) (citing 21 U.S.C. §§ 812(b)(1) & (c)). Because marijuana is listed as a Schedule I drug, "the manufacture, distribution, or possession of marijuana [is] a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Id.* (citing 21 U.S.C. §§ 823(f), 841(a)(1), 844(a)). Although state law may permit marijuana use for medicinal purposes under defined circumstances, federal law treats any possession, distribution, or manufacture of marijuana as a federal offense, and medical necessity is not a defense to a federal criminal prosecution for manufacturing or distributing marijuana. *United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 493–494 (2001).

Brown's objective in admitting his medical marijuana license into evidence was to convince the jury that he intended to use the marijuana himself and he did not intend to distribute it to others. In light of *Oakland Cannabis*, the district court did not abuse its discretion in excluding the license, particularly where the government presented significant evidence that Brown possessed the marijuana with intent to distribute it. Some of the marijuana was packaged for distribution and placed near a loaded handgun. Agents found a large quantity of cash, a digital scale, and a "drug ledger" in the same bedroom where they found the marijuana and firearm, but the agents discovered no evidence that anyone used marijuana inside the home. In view of the evidence presented to the jury, we cannot conclude that it is more probable than not that any error in excluding evidence of Brown's Michigan medical marijuana license materially affected the verdict. *See United States v. Dimora*, 750 F.3d 619, 628 (6th Cir. 2014).

## III.  CONCLUSION

For all of these reasons, we **AFFIRM** the judgment of the district court.

————————————

**DISSENT**

————————————

CLAY, Circuit Judge, dissenting.  Despite the majority's assertion to the contrary, this is not, in fact, a close case.  Because the affidavit in support of the search warrant for Defendant's home failed to make the requisite showing of probable cause to support the search, I respectfully dissent.

The Fourth Amendment safeguards individuals' right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "'At the very core'" of this right "'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'"  *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).  The Constitution makes clear that no search warrant for a residence may issue except "upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  In furtherance of this guarantee, a search warrant will be granted only if there is a "nexus between the place to be searched and the evidence sought."  *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).

It is axiomatic that to establish the requisite nexus, "a warrant application must show more than just that 'the owner of the property is suspected of crime.'"  *United States v. Gunter,* 266 F. App'x 415, 418 (6th Cir. 2008) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).  And no citation should be required to establish that "[t]he mere fact that someone is a drug dealer"—much less a former drug dealer, or an associate of a suspected drug dealer—"is not alone sufficient to establish probable cause to search their home."  *Id.*; *see also United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005).  Today's opinion fails to substantiate the existence of the requisite probable cause necessary to justify granting the warrant application.

What is missing here is the existence of any evidence that Defendant's residence was used for drug transactions.  The only available bases for the search of Defendant's residence were the fact that Defendant is a previously convicted drug dealer, and the agent's assertion that evidence of drug dealers' illicit activities can usually be found at their places of residence.  These

are wholly inadequate bases for issuance of a search warrant. Indeed, the majority's reasoning would be persuasive only if there were two standards under the Fourth Amendment for granting search warrant applications: one for suspected drug dealers, and one for everyone else.

After summarizing the type of evidence that we have previously deemed adequate to support a search warrant, the majority aptly states that "Agent Fitch presented no such evidence to the magistrate judge to support the search warrant in this case." Maj. Op. at 9. The opinion goes on to explain that:

> The affidavit contained no evidence that Brown distributed narcotics from his home, that he used the residence to store narcotics, or that any suspicious activity had taken place there. The affidavit did not suggest that a reliable confidential informant had purchased drugs there, that the police had ever conducted surveillance at Brown's home, or that the recorded telephone conversations linked drug trafficking to Brown's residence.

*Id.* at 11–12. Despite these concessions, the majority characterizes this case as presenting "a close question" and seeks to describe the sparse facts that *were* included in the affidavit as establishing a sufficient nexus to Brown's home. *See id.* at 12. To the contrary, the search warrant in this case was issued based on little more than Brown's arrest, his conviction for an unrelated drug offense twelve years earlier, his *acquittal* on other drug charges, and information related to the police investigation of *another individual*. Because the affidavit supporting the search warrant was devoid of information establishing a nexus between the alleged illegal activity and Defendant's home, I respectfully dissent.[1]

---

[1]The majority insists that the dissent fails to "take into account all of the relevant information known to Agent Fitch." Maj. Op. at 9 n.2. The problem with this assertion is that Agent Fitch was in possession of no information that would have established the requisite nexus between Brown's alleged illegal activity and his home. Presumably, the majority is referring to the fact that Brown possessed a large amount of cash at the time of his arrest, and that a police dog alerted to the odor of narcotics inside an unoccupied car registered to Brown when the car was parked outside another individual's residence. None of this information establishes the necessary nexus with Brown's home.